BANKING HOUSE OF WILCOXSON & COMPANY v. DARR *et al.;* STEADLEY, *Garnishee, Appellant.*

### Division Two, June 8, 1897.

1. **Evidence**: COPY OF TAX LIST. A certified copy of a tax list, which has been sworn to according to section 7534, Revised Statutes 1889, requiring the taxpayer to sign and swear to a list containing a true statement of his notes, if made by the officer having the legal custody of such records, is admissible in evidence by the rules of the common law.

2. ———: HARMLESS ERROR. Admitting a certified copy of a tax list in evidence was harmless where the sole fact it tended to establish was admitted.

3. ———: MEMORANDA IN BEHALF OF GARNISHEE. Entries made by defendant in his private memorandum book, although made by himself contemporaneously with the transaction recited therein, were properly excluded as evidence, if the original account book is not in court, and the memorandum book is offered neither to refresh witness' memory nor as an account book of original entries.

Wilcoxson v. Darr.

4. Pleading: SUFFICIENCY AFTER VERDICT. The garnishee having denied an indebtedness to defendant, plaintiff alleged that he was so indebted in the sum of $4,000 deposited with him by defendant on a certain date, in fraud of the rights of defendant's creditors, and particularly of the plaintiff, and for the purpose of cheating and hindering and delaying the payment of plaintiff's judgment. The garnishee tendered the issue by specifically denying each allegation, and the case was tried as one at law. *Held*, that though such pleading was defective in not alleging specific acts of fraud, yet plaintiff's allegation was sufficient after verdict to support a finding of fraud, no objection thereto having been made till the motion in arrest, and the garnishee not having been misled.

5. Fraud: ATTENDANT FACTS. The defendant, being insolvent, and heavily indebted to plaintiff, traded his farm for negotiable notes, which he tried to turn into money. On learning that if a certain person bought them the trade would be made through the plaintiff's bank, he broke off the negotiations with him at once and sold them to another party, took a foreign draft, went to another town and delivered it to the garnishee, his son-in-law, and advised him to buy a livery stable with it. He and the garnishee, who had been a heavy borrower for years, both testified that the draft was given to pay a large note due the garnishee, which represented a number of small loans previously made to the defendant. The garnishee had never included the note in his sworn statement to the tax assessor, and did not include it in a statement of his commercial standing to his local bank, made a few days previous. He had deliberately burned his account books which should have shown the loans to the defendant. *Held*, that a finding by the jury that the draft was given the garnishee in fraud of the rights of the plaintiff and other creditors, should be upheld.

*Appeal from Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) The court erred in admitting in evidence the certified copies of assessment lists. *Strother v. Christy*, 2 Mo. 148; *Railroad v. Suydam*, 17 N. J. L. 60; *State v. Cake*, 24 N. J. L. 516. While the statute (R. S. 1889, sec. 7534) provides that the assessor shall file

assessment lists with the county clerk, by whom they shall be preserved and kept, it does not authorize copies thereof, certified to by the clerk, to be used as evidence. It gives the clerk custody of the original lists, and that is all. These lists are in no sense "records of proceedings of any court" contemplated by section 4881, Revised Statutes 1889. There is no statute in this state making certified copies of any and all documents in the county clerk's office evidence. The legislature has seen fit to limit the use of certified copies to those made by particular officers of particular records. R. S. 1889, ch. 62. (2) It is a well settled rule that where an officer is merely intrusted with the custody of records and papers, and is not authorized by statute to make copies, he has no more authority for that purpose than any other person. And a certified copy made by such officer is not admissible in evidence. *State v. Cake,* 24 N. J. Law, 517. (3) It was not shown that garnishee had signed or sworn to the original lists, and this proof was indispensable, even though the contents of the lists (the execution being proved) could be shown by certified copies. (4) The court erred in excluding the evidence, in the deposition of W. Z. Darr, of the entries in his books, relating to the execution of the notes to Steadley and the consideration thereof. These books were Darr's private books; the entries were shown to have been made at the time of the transaction. It was not necessary to attach the original books to the deposition as exhibits, nor to produce them on the trial. *Petersburg, etc., Co. v. Manhattan Ins. Co.,* 66 Ga. 446. (5) The second count of plaintiff's denial (upon which the recovery was had) does not state facts sufficient to constitute a cause of action against the garnishee. The denial must state a cause of action, otherwise the garnishee is entitled to be discharged. R. S. 1889,

sec. 5234; *Minor v. Rogers Coal Co.*, 25 Mo. App. 84; *Brown & Ham v. Gummersell*, 30 Mo. App. 345. If the plaintiff sought to recover from the garnishee on account of an indebtedness owing by garnishee to the judgment debtor, plaintiff should have pleaded facts sufficient to show the existence of the indebtedness, and also that it was due as a money demand, and unpaid. *Weil v. Tyler*, 43 Mo. 581. It is well settled that the plaintiff must allege all such facts as he is required to prove. *State to use, etc., v. Bacon*, 24 Mo. App. 403. The averment of such facts is an essential requisite which garnishee did not waive by failing to demur, or by pleading over, or by going to trial. *State to use, etc., v. Bacon*, 24 Mo. App. 406, and cases cited. (6) There was no legal evidence before the jury sufficient to authorize the submission to them of the issue of fraud and indebtedness of Steadley, growing out of the turning over of the $5,000 draft by Darr to Steadley. The *bona fides* of the transaction. was amply shown by the only substantial evidence in the case. Steadley was a creditor and had a perfect right to receive payment of his debt. *Robinson v. Dryden*, 118 Mo. 539; *Buckner v. Stone*, 48 Mo. 409; *Funkhouser v. Lay*, 78 Mo. 462. (7) Instruction number 4 given for plaintiff, authorized a recovery against garnishee on an issue not raised by the pleadings. It was not averred in the denial that the draft turned over by Darr to Steadley was to be held and used by Steadley for the use and benefit of Darr, or for the purpose of concealing the same from the creditors of said Darr. *Bullene v. Smith*, 73 Mo. 151. (8) The seventh instruction given for plaintiff told the jury to take into consideration the insolvency of Darr and the relationship of the parties. This instruction could have been asked for no other purpose than to mislead and unduly influence the jury, by singling

out and giving undue prominence and significance to certain facts in the case, and commenting on the evidence. *McFadin v. Catron*, 120 Mo. 274; *Barr v. City of Kansas*, 105 Mo. 559; *Judd v. Railroad*, 23 Mo. App. 62; *Meyer Bros. Drug Co. v. McMahan*, 50 Mo. App. 23. (9) There was no evidence adduced on the trial that garnishee, at the time of garnishment, had in his custody $1 of the proceeds of the $5,000 draft. If Steadley received the proceeds of the draft, to be held and used for Darr, or for the purpose of concealing the same from Darr's creditors, this would not make him Darr's debtor. (10) The court erred in refusing to set aside the verdict of the jury. The finding of the jury having been for the plaintiff only on the second count of the denial was, in effect, a finding for the garnishee on the first count. *Hoyle v. Farquharson*, 80 Mo. 377. (11) The court erred in adjudging that the judgment against the garnishee should bear eight per cent interest.

*Hale & Son* and *John W. Seebree* for respondent.

(1) The admissibility of documentary evidence does not depend upon express statute, and in the absence of a statute the common law rules of evidence may be resorted to in proper cases. *Muldrow v. Robinson*, 58 Mo. 349. Certified copies of these tax assessment lists by the county clerk having them in lawful custody, were admissible in evidence at common law as "office copies." 1 Greenl. Ev. [13 Ed.], sec. 507, p. 558. That the originals were admissible can not successfully be gainsaid. The trial court had no power to compel the county clerk of Jasper county to transport these lists to distant parts of the State, hence "office copies" are admissible *ex re necessitate*. Other-

wise there would be a failure of justice in this case.
(2) The book entries made by Darr were properly
excluded. They were nothing more than his declara-
tions in his own favor, and that of his assignee of the
draft. The books were not produced. Darr testified.
as to the time when he executed the alleged notes to
Steadley and this was sufficient proof of that fact.
*Anderson v. Volmer*, 83 Mo. 404; *Nelson v. Nelson*, 90
Mo. 464. These book entries were not offered to
refresh the memory of the witness, nor were the
originals alleged to have been lost or destroyed. (3)
Respondent admits that the denial of garnishee's
answer by plaintiff, and the former's reply make up
the issues, and that such denial takes the place of a
petition and must state a cause of action with reasonable
certainty. *St. Louis Coffin Co. v. Barton*, 15 Mo. App.
280, 284; *Lee et al. v. Tabor et al.*, 8 Mo. 323. It certainly
can not be maintained that plaintiff's denial absolutely
states no cause of action, and if defectively stated the
defects are waived by pleading thereto by the garnishee.
*Bank v. Scalzo*, 127 Mo. 165; *Grove v. Kansas City*, 75
Mo. 672; *Bank v. Trenton*, 75 Mo. 380. Especially is
such a defective statement good after verdict, no sur-
prise being alleged on the trial. *Henry v. Sneed*, 99
Mo. 424; *Garth v. Caldwell*, 72 Mo. 622; *Donaldson v.
County of Butler*, 98 Mo. 167; *Grace v. Nesbitt*, 109 Mo.
15; *Hughes v. Carson*, 90 Mo. 399. (4) There is no
question of conversion in the case. The transaction as
between Darr and Steadley was valid, and although
valid between them, if invalid as to Darr's creditors,
plaintiff could recover without proving a case of con-
version. It was a case of fraud and not conversion.
Garnishee having tried the case, and submitted his
instructions on the theory that the case was one at law
and that the relation of debtor and creditor existed
between Darr, defendant, and Steadley, garnishee,

must stand or fall by the position thus taken.  *Seckinger v. Mfg. Co.*, 129 Mo. 603.  (5)  The acts, conluct and manipulations between Darr and Steadley culminating in the transfer of this money and the coincidence of the purchase of the livery stable by Steadley, the attempt to transport the money by Darr bodily instead of by draft to Steadley in Jasper county and various other pointers and *indicia* of fraud and unusual manner of dealing between them at the time of the transaction are sufficient evidences of fraud to go to the jury.  *Van Ralte v. Harrington*, 101 Mo. 608.  Proof of fraud need not (and often can not) be of a direct, positive character, but may be gathered from surrounding facts and circumstances indicative of a design to hinder, delay or defraud creditors.  *Bergert et al. v. Borchert*, 59 Mo. 80; *Renney v. Williams*, 89 Mo. 139; *Robinson v. Dryden*, 118 Mo. 539.  (6)  An instruction, though misleading, does not constitute reversible error, if the law is otherwise fairly and fully laid down so as to cover all the issues in the case.  *Deweese v. Railroad*, 128 Mo. 423.  (7)  Fraudulent transfer may be tried in garnishment proceeding.  *Straus v. Ayers*, 34 Mo. App. 255; *Humphries v. Atlantic Milling Co.*, 98 Mo. 550; *State to use v. Mason*, 112 Mo. 374.  (8)  The case was tried by the parties purely as an action at law without any suggeston of equitable questions, and it is now too late on appeal for either party to raise such a question.  *Whitstore v. Shaw*, 70 Mo. 575.

GANTT, P. J.—On December 8, 1892, the respondent, the Banking House of Wilcoxson & Company, recovered judgment against W. Z. Darr and John R. Wagaman, partners, in the circuit court of Carroll county, for $3,169.39, being the balance due on a promissory note executed by said firm.  Execution issued on this judgment to the sheriff of Jasper county. Steadley, the appellant, was summoned as a garnishee.

The usual interrogatories being propounded by plaintiff, the garnishee answered each interrogatory in the negative. In due time plaintiff filed a denial to the garnishee's answer, averring: *First*, that the garnishee had in his custody, etc., a certain livery outfit belonging to defendant W. Z. Darr of the value of $3,500; *second*, that the garnishee was indebted to the defendant W. Z. Darr in the sum of $4,000, on account of moneys deposited and left with said Steadley by said Darr, on or about the —— day of September, 1892, in fraud of the creditors of said Darr, and for the purpose of cheating and defrauding and hindering and delaying the plaintiff in the collection of its judgment and execution. The garnishee replied, denying specifically the allegations in the denial.

On the issues thus joined, the cause was submitted to a jury for trial March 28, 1894, and resulted in a verdict for plaintiff on the second cause of action set forth in the denial, for the sum of $3,513.14. On which verdict the court rendered judgment for that amount against the garnishee, and adjudged that the garnishee pay eight per cent interest on the judgment. In due time the garnishee filed his motions for new trial and in arrest of judgment, which being overruled, he brings the case to this court by appeal.

On the trial of the cause, the testimony tended to show that on September 1, 1892, the garnishee contracted for the purchase of the livery outfit in controversy with the administrators of Wicks & Campbell, in Carthage; that on said day he paid on said purchase price the sum of $500, overdrawing his account at the bank of Carthage for that amount at the time. By the terms of the contract, the garnishee agreed to pay $2,300 additional for said livery outfit in thirty days. *On the third day of September, 1892, the defendant Darr indorsed and delivered to the garnishee a draft for $5,000,*

*drawn by the First National Bank of Carrollton on the Continental Bank of St. Louis, in favor of Darr, which draft Steadley also indorsed and deposited to his credit in the Bank of Carthage. On the same day, Steadley paid, by check on this bank, the balance of the purchase price of the livery outfit, $2,300.* It was conceded that the livery outfit was purchased with the proceeds of this $5,000 draft. Plaintiff contended on the trial that this livery outfit belonged to Darr and was purchased for his benefit. Garnishee contended that he bought this livery outfit for his own benefit, and that Darr had no interest or claim therein. The great bulk of the testimony at the trial was directed to this issue, it being stipulated on the trial that the livery outfit was worth $3,000. The finding of the jury, it will be seen, was in favor of the garnishee on this issue.

According to the testimony of Darr and the garnishee, Steadley, the $5,000 draft, turned over by Darr to the garnishee, was in payment of Darr's note held by garnishee, dated January 1, 1889, for $3,711.50, due one year after date, with eight per cent compound interest, amounting to $4,925 at the time of the delivery of the draft; that the garnishee paid back to Darr $75, being the difference between the amount of the draft and the amount of the note, and that he also surrendered the note to Darr and marked the same "paid." The garnishee, Steadley, and Darr both testified that this $3,711.50 note was executed by Darr to Steadley, in lieu of five other notes previously executed by Darr to Steadley, the amounts and dates of said notes being as follows: February 15, 1884, note $535.50; January 7, 1885, note for $625; December 22, 1885, $480; July 19, 1886, note for $374; March 11, 1887, note for $700. Each of said notes bore interest from date, having been executed by Darr to Steadley in settlement of debts owing by Darr to Steadley, for

borrowed money. Both Darr and Steadley testified that the indebtedness represented by these notes was genuine, and that the draft was turned over by Darr to Steadley absolutely, for the sole purpose of paying this debt; that the debt was honestly due and unpaid, and that there was no agreement, express or implied, that Steadley should hold this draft or any part of the proceeds of the same, for Darr's benefit.

The evidence on the part of plaintiff to establish that the transaction was fraudulent and that the notes from Darr to Steadley were drawn merely to cover up Darr's property, consisted in the fact that Darr was Steadley's father-in-law; that although Steadley claimed to have held this $3,711.50 note in the years 1890, 1891 and 1892, his assessment lists made under oath to the assessors in Carroll and Jasper counties wholly omitted this note and all the other notes mentioned from 1884 up to 1889. A certified copy of Steadley's Jasper county assessment was read in evidence over the garnishee's objection, and in addition to this when on the stand he testified he did not give in said notes, that like many others he was willing to beat the State out of the taxes on said note. It further appeared in evidence that while Darr owned some valuable real estate near Carrollton he was largely in debt. That he had for years conducted a losing business in handling fine cattle; that he was insolvent about the time the note, on which the bank judgment was obtained, matured. It also appeared that Steadley himself, while claiming that he had loaned Darr nearly $4,000, was, during all that time, a heavy borrower himself; that he had borrowed $2,000 from the Carroll Exchange Bank; that though in mercantile business for ten or twelve years in Carrollton with a capital of $10,000 or $12,000, when he concluded to remove to Carthage to go into business, he totally destroyed all

his books, accounts and memoranda of every kind so that when it was sought to inquire into the origin of this indebtedness from Darr to himself, there was not a vestige of a memorandum of any transaction between the two, except Darr's private memorandum which the trial court correctly excluded.

It was furthermore shown as a circumstance that Darr sold his lands and took notes therefor; that he began negotiations with a Mr. McCombs to raise money on these notes, but when told by McCombs that the transaction would be conducted through Wilcoxson & Company, without notice to McCombs, Darr sold the notes to Eads and took the draft on which Steadley obtained the money to pay for the livery stable at Carthage. A few days prior to the purchase of the livery stable, the garnishee Steadley was asked for a statement of his affairs by a bank in Carthage in contemplation of certain accommodations he desired of the bank and he did not give in the note on Darr. In a word plaintiff claimed that Darr was insolvent; that garnishee was his son-in-law; that there was no satisfactory evidence that Darr owed Steadley anything; that Steadley himself was a constant heavy borrower; that he had never disclosed to the tax assessors of either Carroll or Jasper county the existence of the note from Darr to himself; that Steadley's conduct in destroying all his books and memoranda was a suspicious circumstance; and finally that the jury had the right to disbelieve Steadley and Darr as to the indebtedness from Darr to Steadley as entirely unreasonable and incredible. There was also evidence tending to show that Steadley showed no desire to buy the livery stable until Darr appeared in Carthage; that he had Darr examine the stock and purchased it on Darr's judgment alone; that Darr took the draft in person to Carthage when he could have mailed it as well.

The instructions could scarcely have been drawn more favorable to the garnishee.   To reverse this judgment is the purpose of this appeal by the garnishee.

I.   The admission of the certified copy of the garnishee's tax list given in Jasper county is assigned as error.   The ground of the complaint is that our statute nowhere makes an office copy of this assessment list evidence.   Section 7534 requires the assessment list to be signed and *sworn* to.   It requires the taxpayer to subscribe to an oath that the list so sworn to contains a true account and statement of . . . . . . . "notes unsecured by mortgages or deeds of trust and notes secured by mortgages or deeds of trust."   This list is required to be filed in the office of the county clerk.   It is an original file in his office.   That the original would be evidence, there can be no doubt.   *Boyer v. Tucker,* 70 Mo. 457.   It would certainly have been competent for the jury in an investigation in which the very existence of a debt is the issue, to have known that the person who claimed to owe the debt had sworn in a proceeding required by law, that he had no such debt or had evaded the fact by a sworn list, omitting said debt.   That it is unfortunately a common practice to defraud the revenue by failing to list such debts by no means lessens the turpitude of the oath or the practice. The original being evidence, an office copy of it is admissible by the rules of the common law.   An officer having the legal custody of public records is *ex officio* competent to certify copies of their contents.   1 Greenleaf, Ev., sec. 507, and cases cited; *State v. Austin,* 113 Mo. 538, *loc. cit.* 544.

But aside from this, Steadley testified he was assessed from 1884 up to 1890 and he was asked if he gave in these Darr notes and answered he did not.   No possible injury under such circumstances could have accrued from admitting the copy of the list.

II.   Again it is urged that the court erred in sustaining an objection to a part of the deposition of W. Z. Darr.   Beginning with the cross-examination we find the following interrogatories and answers:

"*Q.* What business were you engaged in 1882, '83, '84, '85, '86, '87 and '88?   *A.* Losing money. Cattle business and farming.

"*Q.* Did the business require the use of large sums of money and frequent payments?   *A.* Yes, sir.

"*Q.* Were those entries made at the time of the settlement of those notes with Steadley?   *A.* Yes, sir.

"*Q.* I wish yould turn to the entry of date of giving the first note.   *A.* Fifteenth of February, 1884, note for $535.50.

"*Q.* Read to the stenographer the item in your book.   *A.* 'February 15, 1884, settled in full with Steadley and gave him my note of $535.50.'

"*Q.* Turn to the next entry of the giving of a note.   *A.* January 7, 1885.

"*Q.* Is it in your handwriting, and made at the time?   *A.* Yes, sir.

"*Q.* Read it.   *A.* 'Settled with Steadley and gave him my note for $625.'

"*Q.* Turn to the next entry.   *A.* December 22, 1885.

"*Q.* In your handwriting?   *A.* Yes, sir.

"*Q.* Made at the time?   *A.* Yes, sir.

"*Q.* Read it.   *A.* 'Settled with Steadley and gave him my note for $480.'

"*Q.* The next.   *A.* 'July 19, 1886. Gave Steadley my note for borrowed money, $374.'

"*Q.* In your handwriting?   *A.* Yes, sir. And made at the time.

"*Q.* Turn to the next.   *A.* 'March 11, 1887. Settled with Steadley; paid him $1,000.85, and gave him my note for $700, making in all $1,700.85.'

"*Q.* I will get you to state if that represented money you borrowed from the time of the giving of the previous note? *A.* Yes, sir."

Plaintiff's counsel objected to all the foregoing testimony in relation to entries in book, for the reason that the witness is testifying from a book or memorandum, which is not produced or identified.

The court sustained the objection.

To which ruling of the court garnishee then and there excepted at the time.

It will be observed that this was not an offer of the book itself nor does it appear anywhere in the record that this was a book account within the purview of our statute. While Darr testified the entries offered were in his handwriting and made contemporaneously with the transactions, the book was not in court. The books were neither used to refresh the memory of the witness nor were they offered in evidence as account books of original entries, so that the offer did not fall within the decision in *The Anchor Milling Company v. Walsh*, 108 Mo. 277 and *Robinson v. Smith*, 111 Mo. 205. As tendered to the court, this evidence was merely Darr's own declarations in his own favor. He testified outside of these entries that he had given these notes and that the note in judgment was the sum of all the previous notes. This was all that the garnishee was entitled to. Certainly we can not convict the circuit court of error when it is apparent it did not see the original book and hence could not determine its character. If competent at all, the books themselves should have been produced and their appearance and character submitted to the jury and an opportunity to plaintiff to cross-examine upon the entries. We think the court ruled correctly.

III. The sufficiency of the plaintiff's denial of the garnishee's answer to support a finding of fraud is

challenged.    No motion was made to make it more specific and no demurrer interposed.    It was first questioned in the motion in arrest of judgment.    The denial is as follows:

° "Second.—And the plaintiff further denies each and every allegation contained in defendant's answer to the second interrogatory, filed herein, and on the other hand, plaintiff alleges and charges that at the time of the service of the garnishment in this cause, the defendant, Steadley, was indebted to the said Wm. Z. Darr, in a large sum, to wit:    The sum of $4,000 on account of moneys deposited and left with the said Steadley, by the said Wm. Z. Darr, on or about the —— day of September, 1892, in fraud of the creditors of said Darr, and particularly this plaintiff, and for the purpose of cheating and defrauding and delaying this plaintiff in the collection of its judgment and execution against the said Wm. Z. Darr.    And plaintiff asks judgment against the defendant herein in accordance with the statute in such cases made and provided."

In his reply the garnishee specifically "denied that at the time of the garnishment he was indebted to the said William Z. Darr in a large sum, to wit:    The sum of $4,000, or in any other sum whatever, on account of money deposited and left with the said Steadley by the said William Z. Darr on or before the —— day of September, 1892, or at any other time, in fraud of the creditors of said Darr, and for the purpose of cheating, defrauding and delaying plaintiff in the collection of its judgment and execution against the said William Z. Darr.

"And said garnishee further denies that he was at the time of the service of said garnishment upon him, or since said time, or at any other time, indebted to said William Z. Darr in any sum or in any manner whatever; and denies that the sum of $4,000, or any

other sum whatever, was ever at any time deposited with this garnishee by the said William Z. Darr for any purpose whatever.''

The substance of the issue thus made was that Darr had deposited or left in Steadley's hands $4,000 of Darr's money in September, 1892, in fraud of Darr's creditors, particularly the plaintiff and for the purpose of cheating and defrauding plaintiff in the collection of its judgment. The pleading is short and concise, likewise the facts supporting it were simple. No amount of words could have strengthened the denial or given the garnishee better notice of the issue he was to meet. Certainly it can not be said this was not a statement of a cause of action. Even if defective in not alleging all the specific acts which constituted the fraud which good pleading requires (*Nichols v. Stevens*, 123 Mo. 98), still, after verdict, it is too late to raise that question, unless the petition is radically defective and wholly fails to state a cause of action. *People's Bank v. Scalzo*, 127 Mo. 165; *Grove v. City of Kansas*, 75 Mo. 672. The reply of the garnishee tendered the issue, and the proof was offered without objection to show that the proceeds of the draft for $5,000 was the property of Darr and had been deposited by him with Steadley. Steadley assumed the burden of showing that while he did receive the proceeds of the draft, he was not a bailee of Darr but in his own right in the payment of a note which Darr owed to him. Certainly he was not misled as to the character of proof required to sustain the issue, the facts of which were peculiarly within his own knowledge. The garnishee met the issue and tried the case *as one at law*, and asserted that he was the creditor of Darr, and submitted his instructions upon this view and can not now complain of the insufficiency of the denial. *Seckinger v. Mfg. Co.*, 129 Mo. 603.

IV. The most serious contention of the garnishee is that there was no evidence of fraud to submit to the jury. It is true that the insolvency of the defendant Darr and the fact that Steadley was his son-in-law are not alone sufficient to establish fraud, but these facts when coupled with other suspicious circumstances may furnish satisfactory evidence of fraud. When it is borne in mind that Darr had usually transacted his banking business with plaintiff, it excites suspicion to learn that when he desired to raise money on the real estate notes that he not only makes no effort to get plaintiff bank to discount them, but he at once breaks off his negotiation with McCombs when that gentleman informs him that in furnishing him money on these notes the transaction would be through the plaintiff bank. Can it be said that a court or jury might not justly discern in such conduct a disposition to hide from plaintiff the knowledge that he was receiving this money? Again it was a most significant fact that Steadley, who was himself a constant borrower of large sums with a capital of only $10,000 or $12,000 should be loaning nearly $4,000 to Darr without the semblance of security therefor, either personal or by mortgages. Nor can it be said to be insignificant that Steadley not only failed to include so large a note from his assessment list made under oath, but when giving his own commercial standing to the Carthage bank to obtain credit he left out this note as a part of his assets. When called upon to account for the inception and origin of so large a note, one would naturally expect a merchant's book to show the cash transactions out of which the indebtedness grew, but the garnishee could make no showing because he had *deliberately burned* all his books, memoranda and papers which would contain a history of his transactions. Why should he destroy all his books, accounts, etc.? Added to this is the

unsatisfactory testimony of Darr.   He was asked "when was the next note?"   He answered "March 11th, 1887."

"*Q.* What amount?"   He answered, "I settled with him by giving him $1,000 and giving my note for $700."

· "*Q.* What did this note represent? *A.* The balance I owed him."

This would be the ordinary course upon a settlement.   The note given would ordinarily be for the whole balance due, but on cross-examination he says this payment of $1,000 and note for $700 only represented what he had borrowed from his son-in-law after giving the note of July 19, 1886, a direct contradiction of his previous statement.   In another place he states that he borrowed $1,000 of Steadley on January 23, 1886, and that he paid that note in full, and yet he afterward testifies that the note for $3,711.50 included the $1,000 note.   Time will not permit that we shall go through all this record and point out its inconsistencies and the various badges of fraud.

There is, however, one controlling fact.   It was conceded that Darr had $5,000, the proceeds of his farm; that he converted it into exchange; that he took the train and went to Carthage and turned it over to his son-in-law.; that he and his son-in-law testified that he owed this money to the son-in-law and paid it to him.   The jury saw these men and heard their evidence.   The cause was tried in a county where they had all lived and where they were known and the jury discredited their statements.   It can not be affirmed of this record that there was no substantial basis for their refusal to believe the story of Darr and Steadley.   We are not justified in holding that the court erred in submitting the case to a jury, nor in refusing to set aside their verdict.

The instructions are very fair to the garnishee. We find no error in the instructions or record except that the clerk makes the judgment bear eight per cent interest. Plaintiff conceded this is an error and enters a remittitur of two per cent in the rate of the interest in this court, which is accepted, and the judgment is reformed so as to read that "said judgment bear six per cent interest per annum" instead of eight per cent, and as amended it is affirmed. SHERWOOD and BURGESS, JJ., concur.