## The New York, Chicago and St. Louis Railroad Company *v.* Lind.

[No. 22,117.   Filed June 25, 1913.]

1. Evidence.—*Judicial Notice.—Foreign Statutes.—Ordinances.* — The courts of this State cannot take judicial notice of foreign statutes or of the ordinances of cities foreign to this State.  p. 42.

2. Municipal Corporations.— *Ordinances.— Effect.—* The ordinances of a city, authorized and duly enacted within the municipal power, have the same local force and effect as a statute. p. 42.

3. Municipal Corporations.—*Ordinances.—Subjects and Titles.— Constitutional Law.—*Provisions of the Constitution respecting the subjects and titles of acts of the legislature do not apply to the enactment of city ordinances.  p. 42.

4. Statutes. — *Pleading. — Foreign Statutes and Ordinances. — Construction.—*The construction of a foreign statute or ordinance by the courts of a foreign state need not be pleaded, unless the right of action depends upon a construction different from that placed upon similar enactments within this State, since, in the absence of a showing to the contrary, it will be presumed that the foreign construction is the same as that of this State.  p. 43.

5. Statutes.—*Foreign Statutes.—Pleading.—*Where a foreign statute is relied on, it must be so pleaded that the court may judge its effect.  p. 44.

6. Railroads.—*Crossing Accidents.— Action.— Complaint.— Proximate Cause.—*In an action for injuries to plaintiff by defendant's train at a crossing in a city foreign to this State, a complaint alleging that certain ordinances and statutes in force in such city required certain specified precautions by defendant for the protection of travelers in crossing its railroad, that the defendant failed to comply with such requirements, and that it carelessly, negligently and unlawfully ran a locomotive backward on the crossing and against plaintiff at a rapid rate of speed without displaying any light or giving any signal, whereby the plaintiff was injured, is sufficient to enable one to know what is intended and is not open to the objection that it does not show that defendant's negligence was the proximate cause of the injury.  pp. 44, 45.

7. Railroads.—*Operation in Violation of Ordinance.—Negligence Per Se.—*The running of a train in violation of the provisions of a city ordinance is negligence *per se.*  p. 45.

8. Railroads.—*Crossing Accidents.—Trial.—Verdict.—Answers to Interrogatories.—*In an action for injuries to plaintiff in colli-

sion with a locomotive at defendant's crossing, where the negligence charged was the defendant's failure to take certain precautions prescribed by statute and ordinance, answers to interrogatories submitted to the jury showing that the headlight on the front of the backing engine was burning, that a caboose was being drawn by the engine, and that the train was drifting on the track without the application of steam, do not warrant the setting aside of the verdict for plaintiff as being in irreconcilable conflict therewith, since the effect of the headlight with reference to the caboose cannot be determined, and it cannot be assumed that the noise from the rails was such that plaintiff could have heard the engine approaching.  p. 45.

9.  EVIDENCE.—*Foreign Statutes.—Admissibility.*—A printed copy of the statutes of another state, purporting to be by authority, under the seal of the Secretary of State, is admissible in evidence under §473 Burns 1908, §457 R. S. 1881.  p. 46.

10.  EVIDENCE.—*Ordinance of Foreign City.—Admissibility.*—The ordinances of a city foreign to this State, properly certified under the acts of Congress applying to such documents, are admissible in evidence under §471 Burns 1908, §455 R. S. 1881.  p. 46.

11.  EVIDENCE.—*Mortality Tables.—Admissibility.*—In an action for personal injuries the Carlisle Mortality Tables are admissible in evidence on the question of damages.  p. 46.

12.  RAILROADS.—*Crossing Accidents.—Evidence.—Place Where Injury Occurred.*—In an action for injuries to plaintiff in a railroad crossing accident, testimony of one of defendant's engineers that he had been running an engine over defendant's tracks for many years from Stoney Island to Twelfth Street, Chicago, which took him over the crossing in question about twice a day, together with that of another witness that Stoney Island is in Chicago, as well as admissions by defendant in its requested instructions and in its briefs on appeal, conclusively show that the injury occurred in the city of Chicago.  p. 46.

13.  WITNESSES.—*Cross-Examination.*—Where a witness, in an action for injuries sustained in a railroad crossing accident, had been examined in chief as to the place where the accident occurred, a question propounded on cross-examination asking if he knew that the location was part of a certain city, was germane to the subject, and was not such a departure from the rules of cross-examination as to constitute reversible error.  p. 47.

14.  RAILROADS.—*Crossing Accidents.—Accident in City.—Location of Crossing.—Mode of Proof.*—In an action for injuries sustained in a railroad crossing accident, proof that the crossing was within the corporate limits of a city does not have to be made by a record of the corporate limits of such city, but can be shown by the oral testimony of persons familiar with the location.  p. 47.

15.  APPEAL.—*Review.—Harmless Error.—Instructions.*—In an

action against a railroad company for injuries sustained in a crossing accident, where the negligence charged was defendant's violation of certain city ordinances regulating the operation of trains, a clause in an instruction fixing a standard of speed different from that fixed by ordinance, was harmless, where the jury found that the rate of speed was within the ordinance limit. p. 48.

16. APPEAL.—Review.—Erroneous Instructions.—Reversal.—In an action against a railroad company for injuries sustained in a crossing accident, where the negligence charged consisted of defendant's violation of city ordinances, instructions submitting violations of ordinances which were not in evidence constituted reversible error. p. 48.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by Andrew Lind against The New York, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*Walter Olds* and *John H. Clarke,* for appellant.

*S. F. Lynn, Bomberger, Sawyer & Curtis* and *William Daly,* for appellee.

MYERS, J.—Action in Porter County, for damages for an alleged injury occurring in Chicago, Illinois, at a street crossing. The alleged errors presented are in overruling the demurrer to the complaint, overruling the motion for a judgment in favor of appellant, *non obstante,* and overruling the motion for a new trial. The theory of the complaint is a common law action for negligence.

The street ran east and west, the double tracks of appellant north and south, crossing the street at grade, at right angles. It is alleged that immediately west of appellant's westerly track, were numerous other parallel railroad tracks; that appellant had carelessly and negligently failed to provide, maintain, use or adopt any gate or other safety appliances at the street crossing for the protection of travelers thereon, and negligently and carelessly failed to employ or station a watchman or guard at the crossing, and negli-

gently failed to light the same or take any precaution or adopt, maintain or use any means for the protection of travelers on the crossing. Certain statutes of the state of Illinois are pleaded giving power to city councils in cities and boards of trustees in villages to regulate speed of locomotives and other vehicles within the limits of the corporation and to require flagmen and other protection at crossings, and also certain ordinances of the city of Chicago requiring the maintenance of burning, brilliant and conspicuous lights on the forward end of locomotives and moving cars, and in case of backing cars or locomotives, requiring a conspicuous light on the rear end of the engine or car, also an ordinance requiring bells to be rung continuously on locomotives while moving, also an ordinance limiting speed to six miles an hour. It is then alleged that about twelve o'clock at night, appellee walking, attempted to cross appellant's tracks on 79th Street, from west to east, and as he approached the tracks, he looked and listened for approaching trains; that certain cars were standing on side tracks north of and near the sidewalk, immediately west of appellant's tracks, by which appellee's view of appellant's tracks was obstructed; that his view was obstructed both north and south by piles of earth on each side of the street; that he could not see, and did not hear, and did not know of the approach of any engine upon appellant's tracks until he was on the track, and it was too late for him to escape injury, and while he was in the act of crossing, and was upon the west of appellant's double tracks, defendant negligently, carelessly and unlawfully ran a locomotive engine with a caboose attached thereto backwards, in a southerly direction upon said track, to and upon the crossing, and against appellee, at the rate of thirty miles an hour, without displaying any light or other signal, and without sounding a whistle, or ringing the bell on the engine, and the engine then and there ran upon, and against him,

and knocked him from the crossing, whereby he was greatly injured, his injuries being detailed.

It is appellant's theory as to the complaint, that it does not show that appellant's negligence was the proximate cause of the injury, and that it was necessary in pleading the statutes of Illinois, and the ordinances of the city of Chicago, to plead the legal effect of the violation thereof; that the laws and ordinances themselves and the construction put upon them in that state by the courts are facts, that is to say, that if the violation of a foreign ordinance as to speed, carrying lights, and ringing bells, is construed in that state to constitute negligence *per se,* it must be so alleged, the same as any other fact, on the theory that he who seeks a recovery under a law foreign to this State, must affirmatively show a cause of action under such foreign law.

It cannot be doubted that we cannot take judicial notice of a foreign statute, much less of an ordinance of a city foreign to this State. That, however, does not present the real question, viz., Must the construction in the foreign state also be pleaded? In this connection it is urged that an ordinance of a city does not have the same force as a statute, for which latter reason the construction given it by the courts of the state of its adoption must be pleaded as any other fact. We are not prepared to concede that city ordinances authorized and duly enacted within the municipal power, do not have the same local force as a statute; they do have the same local force and effect. *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 113, 88 N. E. 1073, 89 N. E. 485, and cases cited. As respects the mode of their enactment, provisions of the Constitution respecting their titles do not apply for obvious reasons. *Baumgartner* v. *Hasty* (1885), 100 Ind. 575, 585, 50 Am. Rep. 830; *Green* v. *City of Indianapolis* (1865), 25 Ind. 490.

We can perceive no good reason, and none is suggested, why the construction of an ordinance of a city foreign to

this State, should be pleaded, any more than that of a

4. statute of another state. If the statute or ordinance is pleaded, and gives a right of action on our construction of a similar statute or ordinance, it will be so treated, unless it appears that the courts of the foreign state have construed it differently. Conversely, if a claim is made to depend upon a particular statute, different from the construction of a similar statute to our own, that construction must then be pleaded and proved, and if its construction there is different from what we here would put upon it, it would be a matter of defense to show such construction. This must necessarily be so, for it will be presumed, or at least assumed for administrative purposes, that the courts of other states will put the same construction that we do upon like statutes, or ordinances of this State. *Wabash R. Co.* v. *Hassett* (1908), 170 Ind. 370, 83 N. E. 705; *Baltimore, etc., R. Co.* v. *Freeze* (1907), 169 Ind. 370, 82 N. E. 761; *Old Wayne, etc., Assn.* v. *McDonough* (1905), 164 Ind. 321, 73 N. E. 703; *Crake* v. *Crake* (1862), 18 Ind. 156; *Bierhaus* v. *Western Union Tel. Co.* (1893), 8 Ind. App. 246, 262, 34 N. E. 581; *Howe* v. *Ballard* (1902), 113 Wis. 375, 89 N. W. 136; *Osborn* v. *Blackburn* (1890), 78 Wis. 209, 47 N. W. 175, 10 L. R. A. 367, 23 Am. St. 400 and note; *Tuttle* v. *National Bank, etc.* (1896), 161 Ill. 497, 44 N. E. 984, 34 L. R. A. 750 and note; *Bock* v. *Lauman* (1855), 24 Pa. St. 435; *Finney* v. *Guy* (1903), 189 U. S. 335, 23 Sup. Ct. 558, 47 L. Ed. 839; *Eastern Bldg., etc., Assn.* v. *Williamson* (1903), 189 U. S. 122, 23 Sup. Ct. 527, 47 L. Ed. 735; *Willard* v. *Conduit* (1853), 10 Tex. 213; *Barkman* v. *Hopkins* (1850), 6 Eng. (Ark.) 157; *Smith* v. *Bartram* (1860), 11 Ohio St. 690; *Smith* v. *Mason* (1895), 44 Neb. 610, 63 N. W. 41; *Fisher* v. *Donovan* (1899), 57 Neb. 361, 77 N. W. 778, 44 L. R. A. 383; *Greenville Nat. Bank* v. *Evans-Snyder-Buel Co.* (1900), 9 Okla. 353, 60 Pac. 249; *Hyde* v. *German Nat. Bank* (1902), 115 Wis. 170, 91 N. W. 230; *Slaughter* v. *Bernards* (1894), 88 Wis. 111, 59 N. W.

576; *Rape* v. *Heaton* (1859), 9 Wis. *328, 76 Am. Dec. 269; *Johnson* v. *Chicago, etc., R. Co.* (1894), 91 Iowa 248, 59 N. W. 66; *Kelley* v. *Kelley* (1894), 161 Mass. 111, 36 N. E. 837, 25 L. R. A. 806, 42 Am. St. 389; *In the Goods of Bonelli* (1875), L. R. 1 P. D. 69; *In the Goods of Dost Aly Khan* (1880), L. R. 6 P. D. 6; *Rowley* v. *London, etc., R. Co.* (1873), L. R. 8 Ex. 221; *Bristow* v. *Sequeville* (1850), 5 Ex. *275. It has been held in this State that a foreign statute must be so pleaded that the court may judge its effect. *Wabash R. Co.* v. *Hassett, supra; Tyler* v. *Kent* (1876), 52 Ind. 583.

The remaining question as to the sufficiency of the complaint is, as to whether appellant's negligence is shown to be the proximate cause of the injury. It is alleged that "defendant carelessly and negligently failed to provide, maintain, use or adopt any gate or other safety appliances at the street crossing for the protection of travelers thereon, and negligently and carelessly failed to provide, employ or station a watchman or guard at said crossing, and negligently failed to light the same, or take any precaution, or adopt or maintain, or use, any means for the protection of travelers," etc. The statute and ordinance are then pleaded, and that while appellee was in the act of crossing, "defendant negligently, carelessly and unlawfully ran a locomotive engine * * * backward * * * to and upon the crossing, and upon and against plaintiff at the rate of 30 miles an hour, without displaying any light or other signal * * * and without sounding a whistle or ringing a bell * . * * and said engine then and *thereby* ran upon, and against plaintiff and knocked him from said crossing," etc. It is elsewhere alleged that the location was in the city of Chicago, and that appellee approached, and was in the act of crossing on 79th Street when he was struck. The case of *Lake Erie, etc., R. Co.* v. *Moore* (1908), 42 Ind. App. 32, 81 N. E. 85, 84 N. E. 506, is not in point for the reason that it was not there alleged,

as it is here, that the train was negligently run over the crossing. In *Chicago, etc., R. Co.* v. *McCandish* (1907), 167 Ind. 648, 79 N. E. 903, it was not shown, as it is here, that the plaintiff was a traveler intending to cross, or was a traveler. Running the train in violation of the ordinance provisions was negligence *per se.* The general allegations as to obstructions, and lack of any precaution to warn or protect travelers, and the existence of the ordinances, show a duty owing appellee, and the allegations show failure to perform it, and that "the engine then and there and *thereby* ran upon, and against plaintiff," that is, through the agency, or in consequence of, or by means of, such omissions and negligent commission, showing the causal connection between the alleged acts of omission and commission, and the injury. The complaint is sufficient to enable one to know what is intended.

The distinguished counsel for appellant urgently press upon our attention the claim of the irreconcilability of the answers to the interrogatories with the general verdict. We have examined them with great care; there is but one of them which in our opinion lends any support to appellant's urgency, that is, that it is found that the headlight on the front of the backing engine was burning and that a caboose was being drawn by the engine. It is urged that in such event the light must have been cast on the caboose ahead of it. It was in the hottest season of the year. Whether the door of the caboose was open or closed we do not know. If it was open, and as close to the light as it must have been we cannot know the effect on the light, or what indication, if any, it would give of a moving train. It is also found that the train was moving on iron rails, and we are asked to assume that some noise was made. Granting this as a matter of common knowledge and experience, we cannot know that there were not many other noises in the locality, there being found to be at least five other service tracks in the same locality. It is found

that the train was drifting without the application of steam, and was running six miles an hour. What, if any, effect these facts and other possibly surrounding facts may have had upon hearing and locating the noise of the train we cannot know. Complaint is also made of qualifications added by the jury to some of their answers. Eliminating all such instances, we are quite clear that the interrogatories and answers are entirely reconcilable with the general verdict.

On the motion for a new trial error is claimed as to the admission of a printed copy of the statutes of Illinois, and certified copies of ordinances of the city of Chicago.

9. The copy of the statutes purports to be by authority, under the seal of the Secretary of State. No specific objection is pointed out and it appears to be authoritative, and admissible. §473 Burns 1908, §457 R. S. 1881. The ordinances seem to be certified under the acts of

10. Congress applying to such documents, and no particular objection is pointed out. §471 Burns 1908, §455 R. S. 1881.

Exception was also reserved to the admission of

11. the Carlisle Tables of Mortality over objection that such table is incompetent. It is conceded by counsel that the admissibility of these tables has been asserted by this court, and we are not presented any reason for a departure from the rule.

It is next urged that a motion made at the close

12. of the evidence to strike out the ordinances of the city of Chicago was improperly overruled, on the grounds, (1) that there was no evidence that the *locus in quo* was in that city, and (2) that it could only be proved by a record of the incorporated limits. As to the first proposition it is sufficient to say that the evidence of an engineer on appellant's railway was that he had been running an engine over appellant's tracks since 1899, "most of the time has been yard service, that is, from Stoney Island to

Twelfth Street, Chicago. That takes me over 79th Street crossing about twice a day.'' Another witness testified that Stoney Island is in Chicago. Admissions of appellant in its brief, and in its requested instructions put the matter beyond question. On cross-examination of a witness introduced by appellant, he was asked and permitted to answer over objection by appellant, that the matter was not in cross-examination, and that the city limits could be proved only by record, ''you know that 79th Street there and the Nickel Plate tracks are a part of the city of Chicago, don't you?'' The witness had been asked about the locality in chief, and as to the speed limits, and had said he did not know about the city limits, or the city ordinances. While the question may not have been strictly cross-examination, it was germane to the subject, and went to a matter of the witness' knowledge, and was not such a departure from the rule as to constitute reversible error.

As to the other question, it was not sought to show the limits of the city of Chicago, but to show that the *locus in quo* was in such city, and was only collaterally invoked, and had been otherwise shown as a district over which such city exercised jurisdiction, as *de facto* a part of, or within the city limits. *City of Albia* v. *O'Harra* (1884), 64 Iowa 297, 20 N. W. 444; *Cleveland, etc., R. Co.* v. *Dunn* (1895), 61 Ill. App. 227.

The court gave 21 instructions on its own motion. Exception is made to Nos. 1, 6, 8, 11, 12, 13 and 15 of those given, and to the refusal to give each of the 38 instructions requested by appellant, the ground of exception as to each instruction refused, being, that the court did not give any instruction covering the specific principle of law stated in each requested instruction, and that appellant was entitled to have each instruction given. We have examined the instructions with care, and are of the opinion that appellant was not harmed by the refusal to give the instructions, or by any of those given, except Nos. 11 and 12.

There was no evidence of any statute or ordinance requiring the sounding of a whistle, but the court gave the following instructions: No. 11. "The statutes of Illinois creating a power in municipal corporations to control the operation of trains within its limits, also ordinances of the city of Chicago requiring the blowing of whistles, and the ringing of bells upon approaching highway crossings, the displaying of a headlight, together with ordinances controlling the speed at which trains may run over crossings have been read in evidence. If the jury find that said injuries complained of occurred in the manner and form as stated in the complaint and occurred within the corporate limits of the city of Chicago, these ordinances may be taken into consideration by the jury in determining the question of defendant's negligence, and, if the jury find that said accident, as mentioned in the complaint, occurred outside the corporate limits of the city of Chicago, they will disregard said ordinances." No. 12. "If the jury find that the defendant did not blow the whistle or ring the bell or display headlights upon the engine or tender or that the speed of the train was greater than ordinary care would warrant, provided you find said engine or tender struck and injured the plaintiff, the jury may take said facts into consideration in determining the question of the defendant's negligence." It is manifest that the negligence could not be predicated on the violation of the ordinance, or a statute as to blowing a whistle, as there was no such ordinance, or statute shown, and the failure to blow the whistle could not be considered in determining the question of negligence under the statute or ordinance. Instruction No. 12 while not referring directly to the ordinance, uses terms which make it quite plain that it is the ordinance provisions which are referred to, and in addition, instead of reference to the speed provided by the ordinance, uses the term "speed of the train greater than ordinary care would warrant," thus taking from the instruction the

ordinance rate, but as the jury has found that the speed was six miles an hour, the ordinance limit, this clause of the instruction did not harm appellant. There is no attempt to justify these two instructions, and they are clearly erroneous and harmful, for under them the jury is told that the failure to blow the whistle, might be taken into consideration in determining the question of negligence under the ordinances.

For these errors the judgment must be reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion, and it is so ordered.

Note.—Reported in 102 N. E. 449. See, also, (1) 16 Cyc. 893; (2) 28 Cyc. 391; (3) 28 Cyc. 378; (4) 36 Cyc. 1242; (5) 36 Cyc. 1241; (6) 33 Cyc. 1058; (7) 33 Cyc. 954, 976; (8) 33 Cyc. 1142; (9) 36 Cyc. 1253; (10) 17 Cyc. 298; (11) 17 Cyc. 422; (12) 33 Cyc. 1090; (13) 40 Cyc. 2489, 2507; (14) 33 Cyc. 1074; (15) 38 Cyc. 1813; (16) 38 Cyc. 1617. As to the presumption that a law of a sister State is identical with that of the forum, see 113 Am. St. 880. On the question of judicial notice as to law of other State, see 67 L. R. A. 34.