[No. 26861. Department One. April 19, 1938.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRY JOHNSON, *Appellant*.[1]

[1] Reported in 78 P. (2d) 561.

*Andrew L. Ulvestad,* for appellant.

*B. Gray Warner* and *Harry A. Bowen,* for respondent.

SIMPSON, J.—February 4, 1937, defendant, Harry Johnson, was convicted in the superior court of King county of the crime of burglary in the second degree.

Before judgment and sentence were imposed, a supplementary information was filed charging him, under

Rem. Rev. Stat., § 2286 [P. C. § 8721], with being an habitual criminal. The supplemental information charged defendant with having been previously convicted of grand larceny in the superior court for the county of Los Angeles, in California, June 4, 1925, and of the crime of knowingly uttering and publishing a forged bank check in the circuit court for Jackson county, in the state of Oregon, January 24, 1930.

Defendant pleaded not guilty to the charge of being an habitual criminal. He was tried by a jury, found guilty, and sentenced to life imprisonment. From that judgment, he has appealed.

■ The charge of being an habitual criminal does not constitute an offense in itself, but merely provides an increased punishment for the last offense. *State v. Le Pitre,* 54 Wash. 166, 103 Pac. 27.

The method pursued by the state to prove the crime of burglary and to show prior convictions was as follows: Certified copies of the judgments of conviction and sentence entered in the courts of Washington, California and Oregon were introduced. Then an expert witness on fingerprints was called, who testified that he had seen the appellant in the King county jail and took his fingerprints there June 6, 1936. The witness was then shown copies of fingerprint records, certified by the wardens of California and Oregon penitentiaries to be true copies of original fingerprint records of the defendant named in the Oregon and California judgments. Upon examining the copies of the fingerprint records and comparing them with the known prints of appellant, the witness testified that the fingerprints which he had taken and the prints in the certified copies of the records of the person named in the judgments were made by the same man. The certificate of the warden, omitting formal parts, was:

"I am keeper and custodian of fingerprint and photographic records of persons convicted of crime and imprisoned in said prison, and that the said fingerprint and photographic records are kept by me on my files in conformity with the law.

"I further certify that the annexed is a true copy of an original fingerprint and photographic record now on file in this prison; that I have compared the transcript hereto annexed with the said original records, and I certify that the same is a true and correct transcript of the said original record and of the whole thereof; . . ."

Then follows in this certificate a statement that the one whose fingerprint record was certified was the same person who was named in the California and Oregon judgments admitted in evidence in this case.

There was attached to the warden's certificate the judge's certificate, which, following the name of the warden, so far as pertinent, was as follows:

". . . is the Warden at the above mentioned Prison and hath the keeping and custody of the finger prints, photographs, files and records of the said Prison; that he is by law the proper officer to make out and certify and attest copies of finger prints, photographs, files and records of said Prison; that full faith and credit are and ought to be given to his acts and attestations done as aforesaid, and that his certificate of attestation to the finger prints and photograph hereto annexed is in due form; that he was such WARDEN, CUSTODIAN AND KEEPER at the time of making and subscribing to the foregoing attestation and certificate."

A certificate was attached by the clerk to the effect that the one who signed the last certificate was a judge, and the presiding judge certified to the identity of the clerk. These documents bear the seal of the court from which they emanated. The certificates of the officials in both states were essentially the same.

Introduction of the copies of the certified records

in evidence was objected to by appellant, and their admission is urged as error.

During the consideration of this case, we have in mind the following provisions of Rem. Rev. Stat., § 2152 [P. C. § 9218]:

"The rules of evidence in civil actions, so far as practicable, shall be applied to criminal prosecutions."

The introduction of the certified copies of judgments of convictions in the courts of California and Oregon was proper and in accordance with the provisions of Rem. Rev. Stat., § 1254 [P. C. § 7773]. *State v. Rowan,* 84 Wash. 158, 146 Pac. 374; *Allard v. La Plain,* 147 Wash. 497, 266 Pac. 688.

Identification of individuals by means of comparison of fingerprints is generally accepted in this and other states. *State v. Bolen,* 142 Wash. 653, 254 Pac. 445; *State v. Witzell,* 175 Wash. 146, 26 P. (2d) 1049; *People v. Sallow,* 100 Misc. 447, 165 N. Y. Supp. 915; *Stacy v. State,* 49 Okla. Cr. 154, 292 Pac. 885; *People v. Les,* 267 Mich. 648, 255 N. W. 407; *Piquett v. United States,* 81 F. (2d) 75.

The essential questions to be determined are: May the identity of the appellant be proved by the introduction of copies of fingerprints certified to be such by the wardens of the penitentiaries of California and Oregon, and may this be done by following the Federal statute which puts into effect the full faith and credit provision of our national constitution?

Although our statutes, Rem. Rev. Stat., §§ 1257 and 1260 [P. C. §§ 7776, 7774], do not directly provide for the admissibility of public records from sister states, provision has been made for their proof and admission by congressional enactment.

Article IV, § 1, of the United States constitution, provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

■ In compliance with this article, the Congress has prescribed in the following statute the manner in which public records, other than judicial proceedings, shall be proved.

"All records and exemplifications of books, which may be kept in any public office of any State or Territory, or of any country subject to the jurisdiction of the United States, not appertaining to a court, shall be proved or admitted in any court or office in any other State or Territory, or in any such country, by the attestation of the keeper of the said records or books, and the seal of his office annexed, if there be a seal, together with a certificate of the presiding justice of the court of the county, parish, or district in which such office may be kept, or of the governor, or secretary of state, the chancellor or keeper of the great seal, of the State or Territory, or country, that the said attestation is in due form, and by the proper officers. If the said certificate is given by the presiding justice of a court, it shall be further authenticated by the clerk or prothonotary of the said court, who shall certify, under his hand and the seal of his office, that the said presiding justice is duly commissioned and qualified; or, if given by such governor, secretary, chancellor, or keeper of the great seal, it shall be under the great seal of the State, Territory, or country aforesaid in which it is made. And the said records and exemplifications, so authenticated, shall have such faith and credit given to them in every court and office within the United States as they have by law or usage in the courts or offices of the State, Territory, or country, as aforesaid, from which they are taken." 28 U. S. C. A., § 688.

The courts of California and Oregon have approved the introduction in evidence of copies of fingerprints

for the purpose of identifying individuals accused of crime. *State v. Smith,* 128 Ore. 515, 273 Pac. 323; *People v. Purcell,* 22 Cal. App. (2d) 126, 70 P. (2d) 706.

As we have related in the present case, the state, in attempting to prove the identity of the individual convicted in the other states, followed exactly the procedure set forth by Congress.

In *James v. James,* 35 Wash. 650, 77 Pac. 1080, where the defendant attempted to prove his right to some property as an heir-at-law by offering adoption papers which were copies of foreign records, endorsed on the back as recorded, but not under the formal seal of the officers, the court said:

"A record from a public office of a sister state is not admissible in evidence, on the mere certificate of the keeper of the record, over his hand and official seal. Only records from the public offices of this state, or of the United States, are so admissible. Records from public offices of sister states, other than courts, must be certified in accordance with the United States statutes, to be admissible in evidence in the courts of this state."

In the case of *State v. Kniffen,* 44 Wash. 485, 87 Pac. 837, 120 Am. St. 1009, the trial court received in evidence a marriage license and certificate of marriage from the state of Michigan, purporting to be a copy of the records of Bay county, Michigan, showing the marriage of Bert Kniffen and Mrs. Nellie Nickelson. In passing upon the question of the admissibility of the record, we said:

"The license and marriage certificate do not appear to be the record or proceeding of any court of the state of Michigan which, under Bal. Code, § 6040 (P. C. § 1013), may be authenticated by the clerk 'or other officer having charge of the records of such court, with the seal of such court annexed.' They appear to

be a public record of Bay county, Michigan, not appertaining to a court, and must therefore be certified as required by § 906 of the Revised Statutes of the United States. *James v. James,* 35 Wash. 650, 77 Pac. 1080."

In the case of *Banking House of Wilcoxson & Co. v. Darr,* 139 Mo. 660, 41 S. W. 227, that court said:

"An officer having the legal custody of public records is *ex officio* competent to certify copies of their contents."

There is a presumption, too, that the official has done his duty. *Riggs v. German,* 81 Wash. 128, 142 Pac. 479; *Camp v. Peterson,* 191 Wash. 634, 71 P. (2d) 1074.

Many other courts have approved the admission in evidence of copies of non-judicial public records when certified in accordance with the Federal statutes, *supra. New York, C. & St. L. R. Co. v. Lind,* 180 Ind. 38, 102 N. E. 449; *Reed v. Stevens,* 120 Me. 290, 113 Atl. 712; *Reid v. State,* 168 Ala. 118, 53 So. 254; *Garrigues v. Harris,* 17 Pa. St. 344.

Appellant contends that there was no showing that the wardens of the penitentiaries from which the records were sent were authorized by law to keep such records, and therefore the Federal statute was not complied with.

In defining the duties of prison wardens, the Penal Code of California, § 1578 (5), provides:

"To grade and classify the prisoners, in accordance with the rules and regulations of the board of directors, . . ."

Section 1576 of the same code provides it shall be the duty of the directors

". . . to prescribe rules and regulations for the government of the prisons, . . ."

3 Oregon Code Annotated (1930), § 67-1907, reads:

"It shall be the duty of the warden to maintain a rogues' gallery and place therein the pictures of all the convicts who are now or may hereafter be confined in the penitentiary, and to take such other steps as he may deem necessary for the recognition and detection of convicts and criminals."

We find that the California and Oregon judges and wardens certified that the warden was

". . . keeper and custodian of fingerprint and photographic records of persons convicted of crime and imprisoned in said prison, and that the said fingerprint and photographic records are kept by me on my files in conformity with the law."

In speaking of the rule that certificates of public officers are *prima facie* evidence of the matters therein contained, we said in *State v. Christensen,* 122 Wash. 236, 210 Pac. 376:

"It is, of course, but *prima facie* proof, and is subject to attack on grounds that any other authenticated document may be attacked, but it is sufficient on its face."

In *Garneau v. Port Blakely Mill Co.,* 8 Wash. 467, 36 Pac. 463, this court held the fact of the record could be proved by the public officer's certificate. The court further held that the auditor, in certifying to the correctness of a copy, could also certify to the name of the person presenting the instrument, to the fact of filing, and to the date, book and page of record.

The rule laid down in *State v. Bolen, supra,* in which the rules and regulations of the war department were considered, is very persuasive in the determination of the question of whether or not the wardens of penitentiaries, in making rules or regulations, or following them out, could keep the fingerprints of convicts and then certify to their correctness.

In that case, we said:

"While there is probably no act of Congress which expressly directs that the secretary of war shall take and keep finger prints of enlisted men and enlistment and service records, yet that department is authorized to make necessary rules and regulations. For instance, § 235, U. S. Comp. Stats., reads:

" 'The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, . . .'

"It seems to us that most men must know that the war department has promulgated rules and regulations which require the preservation of finger prints of all members of the United States army and the making and keeping of service records, and that such rules have for years past been uniformly complied with, and that such rules and the documents prepared thereunder are of such great importance and so vitally necessary that the courts must take judicial notice of them and that such documents are receivable in evidence without extrinsic proof of their correctness or verity. The mere fact that they are kept as they are is *prima facie* proof of their genuineness. The circumstances themselves show the necessity for the adoption of such a rule. The war department has, of course, taken the finger prints of many hundreds of thousands of enlisted soldiers. These have actually been taken by many subordinates who are now scattered throughout the world, and many of whom are dead. Unless the very manner of keeping these things is proof in itself of the recited facts, then they would be of very little value."

We conclude, therefore, that the method of proving the identity of the appellant by introducing certified copies of the fingerprints of the defendant, and then comparing them with the known prints in the possession of the witness, was proper and in accordance with the rules of evidence as approved by the great weight of authority.

The next objection made by appellant was that

the photograph included in exhibit No. 1, which was the certificate of the warden of the Oregon state penitentiary, was not certified to be a picture of the defendant on file in the warden's office. However, an examination of the record does not disclose that appellant made any specific objection to the photograph not being included in the certificate at the trial, although he made numerous objections to the certificate itself. We see no error in the court's ruling upon this question.

It is further contended by appellant that he did not have the opportunity to confront the witnesses testifying against him, as is guaranteed to him by the state constitution.

Documentary evidence is admissible, and its admission is not in derogation of the defendant's right to meet his accusing witnesses face to face, for the simple reason that a document is not a witness. 8 R. C. L. 88; *People v. Reese,* 258 N. Y. 89, 179 N. E. 305, 79 A. L. R. 1329.

The law in this state on this point is settled. *State v. Bolen, supra.* The court allowed in evidence fingerprints from the war department to establish the identity of a dead man who could not otherwise be identified. In that case, we said:

"But appellant further contends that the admission of these exhibits violated § 22 of article I of our constitution, which provides that in all criminal cases the accused shall have the right to meet the witnesses against him face to face. Similar provisions are in the constitutions of many of the states and it has often been held that they have no application to proof of facts in their nature documentary and which can be proved only by the original or authenticated copy. This question has been so thoroughly discussed and reviewed by eminent authorities that we do not feel justified in again undertaking to cover the field. The following leading cases show conclusively that the

admission in evidence of the exhibits in question did not violate any of the appellant's constitutional rights. *United States v. Swan,* 7 N. M. 306, 34 Pac. 533; *State v. Dowdy,* 145 N. C. 432, 58 S. E. 1002; *Commonwealth v. Slavski, supra* [245 Mass. 405, 140 N. E. 465, 29 A. L. R. 281]; *People v. Love,* 310 Ill. 558, 142 N. E. 204; *State v. Torello, supra* [103 Conn. 511, 131 Atl. 429]."

The defendant had a fair and impartial trial, and the court did not commit error in allowing the introduction of evidence.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.

