## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* SUDHOFF, ADMINISTRATRIX.

[No. 21,594. Filed January 11, 1910.]

1. PLEADING.—*Complaint.—Railroads.—Employers' Liability Act.*— A complaint alleging that the plaintiff's decedent was a locomotive engineer, that he was upon his engine which occupied a side-track, that a brakeman had left the switch open, that another locomotive engineer negligently disregarded the absence of a safety signal at such switch, that the absence thereof by the rules required him to stop, and that he negligently ran his engine into such side-track, killing plaintiff's decedent, states a cause of action under section one of the employers' liability act (Acts 1893, p. 294, subd. 4, §8017 Burns 1908), making railroad companies liable for the negligence of their locomotive engineers. p. 320.

2. TRIAL.— *Interrogatories.— Paragraph of Complaint on Which Verdict is Based.*—Answers to interrogatories showing which paragraph of the complaint the verdict is based upon will be disregarded. p. 320.

3. APPEAL.— *Harmless Error.— Rulings on Paragraphs of Complaint.—Verdict Upon Others.*—Rulings upon one paragraph of a complaint will be considered harmless, where the verdict was based upon another. p. 321.

4. APPEAL.— *Weighing Evidence.— Signals.*—The Supreme Court cannot weigh conflicting evidence as to whether a locomotive pass signal was given. p. 323.

5. NEGLIGENCE.—*Proximate Cause.—Question for Jury.*—The question of proximate cause is ordinarily one of fact for the jury, but where the facts are undisputed and but one inference can be drawn, it is for the court. p. 325.

6. NEGLIGENCE.—*Proximate Cause.—Railroads.—Concurrent Negligence of Another.*—Where a locomotive engineer in charge of a "helper" engine ran his engine forward upon a side-track, his brakeman failing to close the switch, and the engineer following with his train disregarded the absence of a signal light at the switch and ran at such speed that he was unable to check his train, thus colliding with the "helper" engine and killing its engineer, the failure to observe the absence of the switch light is the proximate and responsible cause of the death. p. 326.

7. NEGLIGENCE.—*Concurrent.—Railroads.*—Where a locomotive engineer's negligence concurs with a brakeman's in causing the death of an engineer, the company is liable. p. 327.

8. NEGLIGENCE.—*Anticipation of Precise Injury.*—In an action for negligence it is not necessary that the defendant should have anticipated the precise injury which resulted. p. 327.

9. RAILROADS.—*Imputed Contributory Negligence.*—Where a locomotive engineer in charge of a "helper" engine directed his brakeman to close the switch to the side-track and he negligently failed to do so, his negligence cannot be imputed to such engineer so as to render him guilty of contributory negligence, the engineer having the right to presume that the brakeman would discharge his duty. p. 328.

10. TRIAL.—*General Verdict.—Contributory Negligence.*—A general verdict for the plaintiff, in an action for the death of a locomotive engineer, constitutes a finding that the decedent was not guilty of contributory negligence. p. 328.

11. APPEAL.—*Weighing Evidence.—Railroads.—Method of Going on Side Track.*—Whether it was safe for a locomotive engineer to run his engine upon the side-track from the front or rear switch is a question for the jury whose verdict is conclusive on appeal. p. 329.

12. TRIAL.—*Instructions.— Upon Certain Paragraphs.— Verdict Upon Another.*—Instructions upon one paragraph of a complaint, though erroneous, are harmless, where the verdict was based upon another paragraph thereof. p. 329.

13. TRIAL. — *Instructions. — Duplication. — Applicability.* — It is proper to refuse to duplicate instructions, or to give instructions not applicable to the evidence. p. 329.

14. TRIAL.—*Instructions.— Judge Not Required to Modify.*— Instructions requested should be correct, the judge being under no duty to correct them. p. 329.

15. TRIAL.— *Instructions.—Damages.— Amount of.— Death.—Railroads.*—In an action for the death of a locomotive engineer, an instruction that the jury should consider the age of the decedent, his expectancy, health, habits, personal characteristics, earnings, and the fact that he left a widow, and that the jury should

"assess such sum of money as * * * would be right under the circumstances" not exceeding the demand, is erroneous, but the giving of it must be held harmless, where a verdict for $5,000 was returned for the death of a locomotive engineer forty-one years old, in good health, earning $125 per month, and leaving a widow and three young children. p. 330.

16.  EVIDENCE.—*Judicial Notice.—Mortality Tables.*—Courts take judicial notice of the Carlisle mortality tables. p. 331.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Action by Jeannette Sudhoff, as administratrix of the estate of John G. Sudhoff, deceased, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. (Transferred from the Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10.) *Affirmed.*

*John L. Rupe* and *Jesse S. Reeves,* for appellant.
*Shively & Shively,* for appellee.

JORDAN, J.—This action was instituted by Jeanette Sudhoff, administratrix of the estate of John G. Sudhoff, deceased, to recover damages for his death, which is imputed to the negligence of appellant railway company. The complaint is in two paragraphs. Appellant unsuccessfully demurred for want of facts to the second paragraph. There was a general denial and also a special answer by appellant to each paragraph of the complaint. To the special answer appellee replied. Upon the issues as joined the case was tried by a jury. A general verdict was returned in favor of the appellee, assessing the damages at $5,000. Along with this general verdict the jury returned answers to a series of interrogatories. A motion for judgment in favor of appellant upon the answers to the interrogatories was denied. Appellant also moved for a new trial, assigning various reasons therein. This motion was overruled.

The errors pointed out and relied upon for reversal are: (1) Overruling the demurrer to the second paragraph of the complaint; (2) overruling the motion for a new trial.

The first paragraph of the complaint alleges substantially the following facts. Appellant railway company is now and has been for more than five years last past a corporation organized under the laws of the State of Indiana, and during all of said period it owned, operated and managed a line of railroad extending from the city of Cincinnati, Ohio, to the city of Logansport, Indiana, in and through the city of Richmond and the counties of Wayne and Henry in said State; that on January 28, 1905, John G. Sudhoff, deceased, was in the employ of said defendant as an engineer, operating a locomotive engine on said railroad in and through said counties; that said Sudhoff was a competent employe, and upon said date was directed and ordered by a superior officer of said defendant railroad company to connect the engine upon which he was then engineer to a certain engine and freight-train then and there to be run from said city of Richmond to said city of Logansport, over and upon the line of defendant's railroad, in order to assist in hauling said freight-train to a certain station on defendant's railroad known as Sulphur Springs; that when said train, as made up, was within a short distance of said station of Sulphur Springs, the engine, which was being operated by Sudhoff, was disconnected from the engine which was connected with said freight-train, and said engine operated by Sudhoff then proceeded in advance of said freight-train to the switch and side-track at the north side of the main line at Sulphur Springs; that this switch was opened at the south end by H. C. Fickle, a brakeman employed upon said engine with said Sudhoff; that Sudhoff ran his engine into said switch and side-track to a distance of about three hundred feet, and then brought it to a standstill; that Sudhoff remained upon his engine as it stood upon said switch and side-track, as it was his duty to do, waiting until the aforesaid engine and freight-train, which were to be run to the city of Logansport, had passed to the northward; that when said freight-train and engine, which were then running at a

high rate of speed, came to said switch and side-track, instead of proceeding along the main line of said track, were negligently and carelessly permitted to be run into and upon said switch and side-track, and upon and against said engine upon which said Sudhoff was then and there standing; that said freight-train and engine struck the engine, upon which Sudhoff was acting as engineer, with great force, thereby throwing him between the engine and the tender, where his body and legs were scalded by escaping steam, and he was thereby injured to such an extent that he died of the effects thereof on February 1, 1905, at said city of Richmond.

It is further alleged that, at the time of said accident, and long prior thereto, the defendant railroad company maintained a signal-light at the junction of said side-track and main line where Sudhoff entered with his engine as aforesaid; that said signal-light was so arranged that when it was in proper condition and properly operated it displayed a light near the main track at a height of between fifteen and twenty feet from the ground, and could be seen for a long distance by those in charge of an engine approaching the entrance to said switch; that when said switch was open and connected with the main track said signal automatically displayed a red light, which indicated that the switch was open; that when said signal-light was not burning, or was imperfectly displayed, under the rules of the defendant company an engineer operating an engine hauling the train and approaching said switch, and intending to run his said train past said switch and upon the main line, was bound to regard it as a stop signal, and it became his duty to bring his train to a full stop; that defendant company carelessly and negligently failed to have said signal lighted and burning at the time when said engine and freight-train, following said Sudhoff's engine, ran into and upon said switch and side-track against the engine upon which Sudhoff was standing, although it was then in the night-time and between the hours

of sunset and sunrise, and thereby caused said injury and death as aforesaid; that said engineer, in charge of the engine hauling said train, in violation of his plain duty, carelessly and negligently ran said engine and freight-train at a high rate of speed past said signal when the same was not burning and imperfectly displayed, and then and there carelessly and negligently failed to regard said imperfect display and absence of said signal as a stop signal, which it was his duty to do as herein alleged, and then and there carelessly and negligently failed to bring his train to a full stop as was his duty to do as aforesaid.

It is further alleged that the engineer, in charge of said engine hauling the freight-train in a rapid manner as alleged, negligently and carelessly failed to observe that said signal was not lighted and burning at the entrance of said switch and side-track; that by reason of the carelessness and negligence of the defendant company in not keeping said signal-light properly burning and displayed, and the further carelessness and negligence of the engineer in charge of said engine attached to said freight-train in failing to observe that said signal was not properly burning and displayed, and to regard the absence of said signal as a stop signal, and his further careless and negligent act in running his engine and train of cars at a high rate of speed past said signal, contrary to the rules of the defendant company and in violation of said stop signal, which it was his duty to observe, and upon and into said open switch and against said engine upon which said Sudhoff was then standing, the latter then and thereby received said injuries hereinbefore mentioned and described, and was killed as herein alleged.

It is shown that the deceased was forty-one years of age; that he was earning, as an employe of the company, from $100 to $140 per month; that he had been in the employ of the company for about fourteen years; that he left surviving him a widow, and three children of the respective ages of nine, eight and four; that his said wife and children were

wholly dependent upon him for maintenance and support. Wherefore damages in the sum of $10,000 are demanded.

The second paragraph of complaint proceeds upon the theory that the accident, which resulted in the death of the deceased, was due to the negligence of Fickle, the brakeman, in failing to close the switch. It is alleged that said brakeman was, at the time of his employment by the defendant, incompetent, and that he so continued to the time of the accident, all of which incompetency or unfitness on the part of said brakeman in the performance of his duty as such was well known to the defendant company.

Stripping the first paragraph of the complaint of its immaterial and redundant averments, it is evident that under the facts therein alleged it is based upon the provisions of subdivision four of §8017 Burns 1908, Acts 1893, p. 294, §1, which make a railroad company liable for injury or damages suffered by an employe thereof, where such damages are caused by the negligence of one of its servants who is in charge of any locomotive engine or train upon the railroad of such company. The sufficiency of the first paragraph of the complaint is not assailed or in any manner called in question. We dismiss without consideration the contention of appellant's counsel that the court erred in overruling the demurrer to the second paragraph of the complaint, for the reason that the general verdict is based alone upon the first paragraph.

By interrogatory twenty-seven the jury was asked to state, in answer thereto, if it found for the plaintiff, whether it found upon the first or second paragraph of the complaint or upon both. The answer was "Both." Counsel for appellant contend that by this answer it is disclosed that the verdict is founded not only upon the first, but also upon the second, which, as they argue, is insufficient. It is settled, however, by repeated decisions that we cannot regard nor consider an answer to an interrogatory which states upon which paragraph of the complaint the

general verdict is based. *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558; *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162; *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241; *Farmers Ins. Assn.* v. *Reavis* (1904), 163 Ind. 321; *Salem-Bedford Stone Co.* v. *Hilt* (1901), 26 Ind. App. 543.

3. Without regard to the jury's answer to interrogatory twenty-seven, it affirmatively appears, as shown by the other answers to interrogatories, that the general verdict is based upon the first paragraph of the complaint, and does not rest in any respect upon the second. It therefore follows that if the insufficiency of the second paragraph be conceded, the overruling of the demurrer thereto would be harmless and would afford appellant no grounds for reversal. *Robinson* v. *Dickey* (1896), 143 Ind. 205, 52 Am. St. 417; *Marvin* v. *Segar* (1896), 145 Ind. 261; *Conner* v. *Andrews Land, etc., Co.* (1904), 162 Ind. 338.

The following appear to be the facts in the case as established by the evidence and disclosed by the special findings: On January 28, 1905, a short time after midnight, two freight crews in the employ of appellant company were ordered by it to take out one of its regular freight-trains, known as train No. 81, and which ran from the city of Richmond, Indiana, to Logansport, Indiana. The train in question started from Richmond between 2 o'clock and 3 o'clock in the morning. The regular crew employed by appellant in the operation of said train consisted of a conductor, an engineer, a fireman and a brakeman. Lewis E. Wentz was the engineer in charge of the engine at the time of the accident, and prior thereto. The other crew was ordered out to operate a "helper engine," which was to assist in hauling train No. 81. This latter crew was composed of the decedent, John G. Sudhoff, engineer in charge of the "helper engine," a fireman, and H. C. Fickle, brakeman. This crew was called out to go with the "helper engine" only

as far as Sulphur Springs, and then return with the "helper engine" to Richmond. In accordance with orders, said engine was placed at the head of train No. 81, it being coupled to the regular engine, which was in charge of Lewis E. Wentz as engineer, and in this manner the train was run to within two miles of a side-track east of Sulphur Springs, in Henry county, Indiana. At this point, according to an understanding between those in charge of the train, the "helper engine" was detached from said train, and was run ahead of it to the side-track, and entered upon the latter track by the east switch, it being understood by the crew connected with the train that the "helper engine" would take the side-track, and thereby permit the train to pass, and that thereafter the "helper engine" would return to Richmond. After this latter engine with its tender was detached from the train, the brakeman and the fireman employed thereon were subject to the orders of engineer Sudhoff. Upon reaching the switch in question, Sudhoff ordered his brakeman to open the switch and let the engine pass in, and then directed him to close it. The brakeman opened the switch, as directed, and Sudhoff ran his engine into and upon the switch to a distance sufficient to permit the freight-train coming from the rear to pass the engine; but the brakeman, after opening the switch to let the "helper engine" pass onto the side-track, neglected to close it. At the time of the accident and for a long time prior thereto, the universal custom of appellant, in compliance with the statute, was to maintain switch-lights in the night-time upon all switches on its road. These lights were so arranged that they indicated to those in charge of locomotive engines operating upon the road whether the switch was open or closed. A rule of appellant company required all engineers in approaching a switch in the night-time, where no light appeared upon such switch-stand, to consider the absence of such light as a signal to stop, unless

such engineer received a proper signal by hand lantern inviting him to come on with his train.

On the night of the accident in question, at the time the "helper engine" arrived at the switch, there was no light upon the switch. The reason for the absence of the light at that time is not fully disclosed by the evidence. It further appears that said engineer in charge of the engine hauling freight-train No. 81 knew the rule of the company, before referred to, and he knew that the absence of a light upon the switch was a signal requiring him to stop his train, and he knew and understood that there was no light upon the switch when he was a sufficient distance therefrom to stop his train. He also knew that Sudhoff was on the sidetrack with the "helper engine," but it appears that with the knowledge of all these facts, and in violation of the rules of the company requiring him to stop his engine, in case there was no light at the switch, he ran down upon the open switch with a heavy freight-train which his engine was hauling, at such a rate of speed that he was wholly unable, after discovering that the switch was open, to stop his engine, and thereby avoid the collision. His engine collided with the engine in charge of Sudhoff, and thereby caused the injury from the effects of which the latter died, as alleged in the complaint. The evidence shows that Sudhoff was a locomotive engineer; that he was, at the time of the fatal accident, in the service of appellant company, and had been for several years prior thereto, as an engineer in charge of one of its engines; that the accident occurred in the night-time, immediately after the "helper engine" had been run onto the side-track as hereinbefore shown.

There is a conflict in the evidence as to whether Wentz, the engineer in charge of the engine hauling train No. 81, was given a signal to come on after the "helper engine" in charge of the decedent had passed onto the side-track, before the collision in question. Wentz, together with other witnesses, testified that such signal to

4.

come forward was given to him, while, upon the other hand, this evidence is positively disputed by the evidence of the brakeman, who was with the engine which was in charge of the decedent. He testified that no signal was given to the engineer in charge of the freight engine to come on with his engine. By answer to an interrogatory the jury expressly found that no signal to come on was given to engineer Wentz. This fact, having been decided by the jury adversely to appellant company, settles that question, and we leave it as found by the jury. There is evidence to show that engineer Wentz could see the lights of the lanterns employed by the crew connected with the "helper engine," and that he knew that it was dangerous for him to come on with his train without a signal from those connected with the latter engine, which had been run onto the side-track. This latter track was about one-half mile in length, and was connected with the main track by a switch at either end.

Counsel for appellant in their brief say: "The material and controlling question in this case is, What, in a legal sense, was the proximate cause of the injury?" The insistence is that the evidence shows that the act of brakeman Fickle in neglecting to close the switch was the direct, responsible and proximate cause of the fatal accident, and that because he and the deceased engineer were fellow-servants, therefore there can be no recovery upon the first paragraph of the complaint. It is argued that the engineer, whose negligence is imputed to appellant company, could not reasonably have foreseen that the switch was open, and that by coming on with his train he would run into it and collide with the engine of which the decedent was in charge. It is further insisted that the act of the decedent, in running his engine upon said track, and the failure of the brakeman to close the switch after the engine had passed onto the side-track, were new and independent causes intervening between the negligence complained of and the injury and death which resulted therefrom. It is undisputed that the collision of

the engine in charge of engineer Wentz with the "helper engine" standing on the siding was the active and efficient cause of the injury to appellee's decedent.

The jury further finds, by an answer to another interrogatory, that the signal at the switch had not been lighted on the evening of the night of the accident. It may be conceded that if the switch in controversy had not been left open by Fickle, the brakeman, the engine of train No. 81, in charge of Wentz, would have safely passed decedent's engine as it stood upon the siding, and that the collision would not have happened. That the open switch, due to the negligence of the brakeman, made the fatal collision possible must be conceded; but under the undisputed facts it cannot in reason be said to have been the immediate, direct and proximate cause of the collision in controversy. The negligent act of Fickle was not a matter which intervened between the negligence of Wentz and the fatal collision. The negligence of Fickle, the brakeman, in leaving the switch open, in the absence of the negligence of engineer Wentz in failing to regard and obey the rules of appellant, would certainly have been harmless to appellee's decedent. It is true that it may be asserted that in the absence of the open switch the negligence imputed to Wentz would have resulted in no harm or injury to the decedent. While the two causes—the open switch and the negligence of engineer Wentz—resulted in the fatal accident, still it is manifest that the negligence of Fickle, the brakeman, in failing to close the switch, was not the dominant or proximate cause of the injury sustained by the decedent.

It is true, generally speaking, that the question of proximate cause is one of fact to be determined by the jury in like manner as other issuable facts. But where the facts relating to proximate cause are undisputed, and but one conclusion can be deduced therefrom, this question becomes a matter of law to be determined by the court. *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346,

49 Am. Rep. 168; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, and authorities cited; *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308.

Aside from the controverted fact as to whether Wentz was given the signal to come on with his engine, the happening of the fatal accident and the other facts relating to the proximate cause thereof stand virtually undisputed, and but one conclusion can be drawn therefrom. Hence, under the rule, as before affirmed, the proximate cause is reduced to a matter of law to be determined by the court. If the fact that Wentz was given a signal to come on with his engine, as required by appellant's rule as hereinbefore mentioned, had been established in appellant's favor, it would have shown that Wentz was not guilty of negligence in disobeying the rule of appellant, and therefore would have defeated a recovery by appellee upon the first paragraph of complaint. While this controverted fact was essential upon the question of the negligence of Wentz, nevertheless it did not enter into or relate to the question whether his negligence in the premises was the proximate cause of the injury sustained by the decedent.

It follows, and we so hold, that the uncontroverted facts in this case show that the negligence of Wentz in running said engine onto said side-track without regarding a signal to stop, as required by the rules of appellant, there being no light at the time at said switch, was the dominant and responsible cause which produced the fatal accident which resulted in the death of decedent. Or, in other words, said negligence of Wentz was the proximate cause of the collision in question. Our holding in this respect is fully supported by the authorities. *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, and authorities cited; *Louisville, etc., Ferry Co.* v. *Nolan* (1893), 135 Ind. 60; *Davis* v. *Mercer Lumber Co., supra; Chicago, etc., R. Co.* v. *Pritchard* (1907), 168 Ind. 398; *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222,

and authorities cited; Bishop, Non-Contract Law, §462; 21 Am. and Eng. Ency. Law (2d ed.), 495.

While, as previously said, the negligence of Fickle, the brakeman, in failing to close the switch, concurred with the negligence of Wentz, the engineer in bringing about the fatal accident, nevertheless, from no view of the facts can it be asserted that the negligence of the brakeman was the proximate cause which produced the death of the decedent. The fact that the negligence of Fickle, a fellow-servant of appellee's decedent, may have concurred with the negligence of Wentz—for whose negligence appellant, under the statute, is liable in this case—will not exempt appellant company from the responsibility or liability for the death of appellee's decedent. 3 Elliott, Railroads (2d ed.), §1306.

The contention of appellant that Wentz could not have foreseen that the switch in question was open, and that by running ahead with his train he would run into the open switch and collide with the engine standing on the side-track, and thereby cause the injury in question, is untenable and without merit. As the authorities affirm, it was not essential that he should have anticipated the precise condition of the switch and the particular injury which might result if he ran ahead with his train. *Davis* v. *Mercer Lumber Co., supra; Chicago, etc., R. Co.* v. *Pritchard, supra,* and authorities cited. In 1 Street, Foundations of Legal Liability, 104, the author states the rule as follows: "It is not necessary that one should be able to foresee the particular harm which actually befalls. It is enough if an ordinarily prudent person should be able to see danger or harm of some sort ahead. Harm in the abstract, not harm in the concrete, is the idea."

To recapitulate: Wentz knew, as the evidence shows and as the jury found, that the "helper engine," of which decedent was in charge, was upon the side-track; he could see the lights in use upon the latter engine; he knew that the

switch-light was out, and that fact alone, under the rules of the company, he was required to recognize and regard as a signal to stop. He was forewarned in this respect in time to stop his engine before arriving at the switch. Under these circumstances, had. he stopped his engine and made an investigation he certainly could have discovered the condition of the switch, and thereby have prevented the fatal accident.

Counsel for appellant insist that inasmuch as Fickle, the brakeman upon the "helper engine," after the latter was detached from the freight-train in question, was subject to the orders of Sudhoff, it was the duty of the latter, as the person in charge of the "helper engine," in order to protect himself and his crew, and also for the protection of train No. 81, which was to pass his engine, to see that the switch had been closed by his brakeman, and that his failure to see to the closing of the switch rendered him responsible for the collision; or, in other words, that the negligence of Fickle in not closing the switch must be imputed to Sudhoff, and therefore the latter was guilty of contributory negligence. This contention is untenable. Fickle was not in the employ of Sudhoff. He was the servant of appellant, placed by the latter upon the "helper engine" to perform the service and duties required of him as a brakeman. In the absence of anything to the contrary, the decedent had the right to presume that the brakeman furnished to him by appellant was competent, and would properly and faithfully discharge his duties. The mere fact that he was subject to the orders of the decedent did not impose upon the latter the duty, after he had directed the brakeman to open the switch to enable the engine to pass in upon the siding, to follow after the brakeman and see that he had properly closed the switch.

By the general verdict the jury find the issue of contributory negligence on the part of the decedent adversely to appellant, and under the evidence there

is no room for us to disturb the finding of the jury upon this issuable fact.

The further claim of appellant is that it would have been safer for Sudhoff to go with his engine to the west end of the side-track and back in than to head in as he did at the east end. This contention is denied by the jury under one of the interrogatories, and, as the evidence supports the finding, we leave that question of fact as found by the jury.

The trial court gave a series of instructions. A part of these charges are applicable alone to the issues tendered by the second paragraph of complaint; and as the verdict is based upon the first paragraph, the second, so far as concerned in this appeal, may be considered as eliminated therefrom, and the objections of appellant urged against the instructions applicable to the second paragraph need not be considered; for if it were conceded that they are impressed with error, such error would be harmless. Other instructions of the court applicable to the first paragraph are criticised by counsel for appellant. These objections, however, are not well taken, except as to instruction twenty-seven, which we will hereafter consider. The propositions of law advanced by appellant's counsel, in respect to the charges in question, in the main have been determined upon the contentions of appellant hereinbefore specifically mentioned.

Appellant complains of the refusal of the court to give certain instructions which it requested. We find no available error in the refusal of these charges. Some of them are covered by instructions given by the court on its own motion, and others do not state correctly the law applicable to the case. In order to predicate error on the refusal of a court to give instructions, the party requesting them must be able to show that he was entitled to have the instructions given to the jury as written and requested. No obligation can be said to

rest upon the trial court to modify instructions requested, and then give them in their modified form.

Counsel for appellant insist that instruction twenty-seven, given by the court, is clearly and unmistakably erroneous. In this instruction the court said to the jury that in the assessment of damages "you have the right to consider the age of the appellant's decedent at the time of his death, and the time to which he probably would have lived and remained able to earn money, considering his health, habits and personal characteristics, the amount of money he was earning at the time of his death,  *  *  * and the fact that he left a widow." The court closed the instruction by stating: *"It will be your duty to assess such sum of money as you think would be right under the circumstances,* not exceeding the amount claimed in the complaint." (Our italics.) The objection urged against this instruction, as stated by counsel for appellant, is "that it is not now nor never has been the law that the measure of damages by death by wrongful act is left to assessment by a jury as it thinks right under all circumstances." We fully concur in this criticism, and hold that that part of the charge italicized, as insisted by counsel, is manifestly erroneous. The question then arises, Does the giving of the portion of the charge objected to by the appellant constitute reversible error?

While it may be said that in this class of cases there is no hard and fast rule by which a jury must be guided in the assessment of damages, still it is not to be permitted to guess at the amount of the damages, but in the assessment thereof it should exercise a reasonable discretion, after the consideration of all proper evidence bearing upon the question of damages. The evidence shows beyond any dispute that the decedent, at the time of his death, was forty-one years old; that he was an experienced locomotive engineer; that he had been in the service of appellant for fourteen years prior to his death; that his average earnings at the time of his death were $125 per month; that he was a strong,

vigorous and healthy man; that he left surviving him a widow and minor children. According to the Carlisle tables of mortality showing the probable expectancy of life, of which tables we take judicial knowledge, the probable expectancy of the life of a person of the age of forty-one is twenty-six and ninety-seven hundredths years. Of course these tables are not to be regarded as fixing the life of a particular person; their only proper or legitimate use is to aid in ascertaining the probable duration of life. 3 Elliott, Railroads (2d ed.), §1378.

Considering alone the undisputed facts, namely, the age of the deceased at the time of his death, that he was an experienced locomotive engineer, his good physical condition, that his average earnings were $125 per month, or $1,500 per annum, the probable duration of his life, under the circumstances, that he left surviving him a dependent widow, and barring the fact that he left dependent minor children, and eliminating all other facts that the jury had the right to consider in estimating damages—the award of $5,000 appears to be so reasonable that there is nothing even to suggest that it in any manner is impressed or affected by that portion of instruction twenty-seven, as insisted by counsel for appellant and held by us to be erroneous. We are of the opinion that it is apparent that appellant was not prejudiced in its substantial rights by the error in the instruction in question.

This case, under the facts, is easily distinguishable from that of *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147. There is nothing in what we have herein asserted in respect to the award of damages which is inconsistent with our holding in that case.

After giving full consideration to all of the points relied upon by appellant for reversal, we find no available error, and are satisfied that, under the facts, appellant is clearly liable for the death of appellee's decedent.

Judgment affirmed.