## THE WABASH RAILROAD COMPANY *v.* GRETZINGER, ADMINISTRATRIX.

[No. 22,005. Filed February 19, 1914. Rehearing denied July 2, 1914.]

1.  PLEADING.—*Complaint.*—*Sufficiency.*—A complaint will withstand attack by demurrer, though some of its averments are indefinite and not stated with directness, if the necessary allegations can be gathered from all the averments.  p. 161.

2.  MASTER AND SERVANT.—*Injuries to Servant.*—*Railroads.*—*Collision.*—*Complaint.*—*Contributory Negligence.*—A complaint for the death of a freight train conductor, whose train was run into by a passenger train while it was stationed on a side track, averring that after decedent's train was placed upon the siding the

switch was closed and securely locked by one of his brakemen, and that decedent had no actual knowledge that the switch had been thereafter opened, and in the exercise of ordinary care could have had no such knowledge, and containing no averments warranting the inference that after his train was placed decedent neglected to perform any duty devolving upon him, does not show contributory negligence of decedent in failing to keep the switch closed.   p. 161.

3.   MASTER AND SERVANT.—*Injuries to Servant.—Railroads.—Collision.—Assumption of Risk.—Complaint.*—A complaint for the death of a freight train conductor, whose train was run into by a passenger train while it was upon a siding, showing that after decedent's train was placed upon the siding the switch was securely closed and locked by one of his brakemen, alleging that decedent had no knowledge, and in the exercise of ordinary care could not have known that the switch was subsequently opened, and disclosing no facts showing that decedent had failed to perform any duty devolving upon him to discover that it had been opened, but containing allegations which rather rebut such inference, is not subject to the objection that it shows that decedent assumed the risk of the danger of the open switch.   p. 162.

4.   MASTER AND SERVANT.—*Injuries to Servant.—Railroads.—Collision.—Complaint.*—In an action for the death of a freight train conductor, whose train was run into by a passenger train while it was upon a siding, an allegation of the complaint that, after the train was placed upon the siding and the switch locked, the decedent was engaged in making a report that he was required to make by the orders of defendant, did not render the complaint subject to demurrer, though no copy of the orders was set out.   p. 162.

5.   PLEADING.—*Certainty.*—Where greater certainty is desired in a pleading, the remedy is by motion to make more specific.   p. 162.

6.   MASTER AND SERVANT.—*Injuries to Servant.—Negligence.—City Ordinance.—Complaint.*—A complaint for the death of a railroad conductor, whose train was run into by a following passenger train, charging negligence in the operation of the latter train at a speed in excess of that allowed by a city ordinance, and which set out a copy of the section of the ordinance alleged to have been violated, was not insufficient for failure to set out the section providing the penalty for violation, or to aver that the ordinance provided a penalty.   p. 162.

7.   MUNICIPAL CORPORATIONS.—*Ordinances.—Identification.*—In an action for the death of a freight train conductor in a collision caused by negligence in the operation of a colliding passenger train which was being run at a speed in excess of that allowed by a city ordinance, where the record of the minutes of the pro-

Wabash R. Co. *v.* Gretzinger—182 Ind. 155.

ceedings of the city council, showing a report of the presentation of a revision of the city ordinances which included the ordinance alleged to have been violated, and showing the adoption of an ordinance adopting the revision by "aye" and "no" vote on April 24, 1872, was admitted in evidence, and the city clerk, who was called as a witness, produced a record of his office which, though not designated by letter, number or figure, was known as the "old ordinances" of the city and contained what purported to be the general ordinances of the city, including the ordinance alleged in the complaint, followed by an ordinance adopting the revised ordinances of the city which recited that the preceding ordinances constituted such revised ordinances, and showed its passage on May 28, 1872, and the signature and attestation of the mayor and clerk, respectively, the ordinance alleged to have been violated was sufficiently identified to warrant the admission in evidence of such ordinance as the same appeared in such book of ordinances.   p. 163.

8.  MUNICIPAL CORPORATIONS.—*Ordinances.*—*Record.*—The act of 1867 (§3099 R. S. 1881, Acts 1867 p. 33), providing that city ordinances should be recorded in a book kept for that purpose, and signed by the presiding officer and attested by the clerk, and that the "yea" and "nay" vote should be entered of record, is directory merely.  p. 164.

9.  MUNICIPAL CORPORATIONS.—*Ordinances.*—*Compilation.*—A municipal corporation, in the absence of statutory prohibition, may by a single ordinance adopt a compilation or revision of ordinances without the formality of a separate vote on each ordinance. p. 164.

10.  EVIDENCE.—*Municipal Boundaries.*—*Parol Proof.*—Where the question of a municipal boundary was only collaterally involved for the purpose of showing that a collision in which plaintiff's decedent was killed occurred within the corporate limits of the city, parol evidence was admissible upon that subject, and, having been admitted, error, if any, in the admission of certain boundary ordinances and plats of the city was rendered harmless. p. 165.

11.  MASTER AND SERVANT.—*Injuries to Servant.*—*Railroads.*—*Operation.*—*Negligence.*—Where a freight train conductor was killed by a passenger train colliding with his train while it was upon a siding, as a result of the operation of the colliding train at a speed prohibited by city ordinance, decedent could not be charged with an assumption of the risk from the fact that he knew of the habitual violation of such ordinance, since such operation of the train was negligence *per se* and any number of violations could not render the ordinance obsolete.  p. 167.

12. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Neg-*
*ligence.—Jury Question.—*In an action for the death of a freight
train conductor by the colliding of a passenger train which ap-
proached after his train had been placed upon a siding, where the
rules of the company did not require decedent to watch the
switch target after it had been locked, and the evidence showed
that he had many duties to perform while his train was upon
such siding, it was for the jury to determine whether he was
guilty of contributory negligence in failing to discover that, after
being locked, the switch had again been opened by some one.
p. 168.

13. MASTER AND SERVANT.—*Injuries to Servant.—Railroads.—Op-*
*eration.—Collision.—Proximate Cause.—*In an action for the
death of a freight train conductor, whose train was run into by a
passenger train while it was upon a siding, where the negligence
charged was the operation of the passenger train at a prohibited
rate·of speed, and there was evidence showing both that the
accident would not have occurred if the switch had not been
open, and that it would not have occurred if the passenger train
had been running at a lawful rate of speed, the verdict for
plaintiff can not be disturbed on the ground that the open con-
dition of the switch, and not the negligence charged, was the
proximate cause. p. 168.

14. NEGLIGENCE. — *Causes. — Proximate Cause. — Jury Question.—*
Where two causes result in an accident, the question of the
dominant or proximate one is ordinarily for the jury. p. 168.

15. MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—An-*
*swers to Interrogatories.—*In an action for the death of a freight
train conductor, whose train was run into by a passenger train
after it had been placed upon a siding, where the negligence
charged consisted of the operation of the passenger train at an
unlawful rate of speed, answers by the jury to interrogatories
showing that decedent could have discovered that the switch
had been opened after his brakeman had locked it, were not in
irreconcilable conflict with the verdict for plaintiff, which in-
cluded a finding that decedent was not guilty of contributory
negligence. p. 169.

16. DEATH.—*Action for Wrongful Death.—Abatement.—Marriage*
*of Widow.—Damages.—*An action for a wrongful death of a
married man brought under §285 Burns 1914, Acts 1899 p. 405,
would not abate on the remarriage of the widow, even were she
the sole beneficiary, and the fact of remarriage can not be con-
sidered in the assessment of the damages in such an action.
p. 169.

17. TRIAL.—*Interrogatories to Jury.—Submission.—*The enclosing
of interrogatories to the jury in a sealed envelope with direc-

tions that they are not to be considered until a general verdict has been agreed upon, is not to be approved, since the consideration of such interrogatories by the jury in deliberating on the general verdict will better enable it to make a conscientious general finding; however such method of submission was not cause for reversal, where, in view of instructions given, and the answers returned by the jury, it is apparent that no harm resulted therefrom. p. 170.

18. DEATH.—*Damages.—Excessiveness.*—In an action for wrongful death, where the evidence showed that decedent was twenty-six years old, healthy, sober and industrious, and earned $100 per month, $70 of which he devoted to the use of his family, a verdict of $10,000 was not excessive. p. 171.

19. DEATH.—*Parental Care.—Loss to Infant Child.*—Where, in an action for the death of a railroad conductor, brought for the benefit of the widow and child of decedent, the evidence showed that decedent was sober and industrious, that he was of sufficient intelligence to hold the position of conductor when only twenty-six years of age, and that from his monthly salary of $100 he gave $70 to his wife for the benefit of herself and child, it was proper to instruct the jury that on the question of damages it could consider the loss, if any, to decedent's child of such parental care, training, advice and guidance, as the evidence showed she would otherwise have received but for his death. p. 171.

From Howard Circuit Court; *B. C. Moon,* Special Judge.

Action by Mary A. Gretzinger (*nee* Beedle), administratrix of the estate of Baily Beedle, deceased, against The Wabash Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Edwin P. Hammond, Dan W. Simms, William V. Stuart, Allison E. Stuart* and *Blacklidge, Wolf & Barnes,* for appellant.

*Cox & Andrews, Bell & Kirkpatrick* and *McConnell, Jenkines, Jenkines & Stuart,* for appellee.

MORRIS, C. J.—This is the second appeal in this cause. *Wabash R. Co.* v. *Beedle* (1910), 173 Ind. 437, 90 N. E. 760. The action was instituted by Mary A. Beedle as administratrix of her deceased husband's estate, to recover damages for his death, alleged to have been caused by negligence of ap-

pellant's engineer on a passenger train, under subd. 4, §8017 Burns 1914, Acts 1893 p. 294. On the former appeal the complaint was held insufficient. When the cause was remanded the complaint was amended. In the meantime the administratrix had married one Gretzinger. To the complaint as amended, appellant filed a demurrer for want of facts, which was overruled. It then answered in three paragraphs, the first of which was a general denial; the second averred contributory negligence growing out of the alleged violation by decedent of certain rules; the third averred facts purporting to establish assumption of risk.

The complaint is very long. Among other things it alleges that on the day of the injury decedent Beedle was appellant's conductor in charge of a freight train, which had entered the city of Delphi from the west; that on the north side of appellant's main track, within the city limits, there was a side track extending east, 900 feet from a point 2,013 feet east of the west corporation line; that at said point the side track was connected with the main one by a switch, with a target attached, which indicated whether the switch was open or closed; that the target was plainly visible to an engineer approaching from the west for a distance of 300 feet west thereof; that a train running from the west would enter the side track when the switch was open; if closed, it would proceed east on the main track. It is further averred that, pursuant to appellant's orders, for the purpose of permitting one of appellant's regular passenger trains to pass east through the city, on the main track, Beedle ran his freight train on the switch, and stopped it so that the rear end thereof was from 250 to 300 feet east of the switch, and held the train there until the accident; that on stopping his train, the switch was closed, and securely locked by one of Beedle's brakemen; that thereafter, before the accident, without Beedle's knowledge, some unknown person opened it; that on stopping his train, after the switch was closed, Beedle, pursuant to appellant's orders, was engaged, among

other things, in making his train report, and had no knowledge, previous to the accident, of the open switch, or of the approach of the passenger train; that while so engaged, the passenger train entered the city limits at a speed of forty miles per hour, and maintained such speed until its engine struck Beedle's caboose and killed him; that the passenger engineer, when 300 feet west of the switch saw that the target indicated an open switch, but it was then impossible to so reduce the speed as to avoid the accident; that at any point on the main or side track, between Beedle's caboose and the west city boundary, the passenger train could, while running at the rate of six miles per hour, have been stopped in a distance of fifty feet; that at that time, and for years prior thereto, train speed, within the city limits, in excess of six miles per hour, was prohibited by a city ordinance; that the proximate cause of the injury was the passenger engineer's negligence in running his train at the said unlawful rate of speed.

The complaint is assailed for alleged indefiniteness, ambiguity, and lack of direct averment. The length of the pleading is such that we do not deem it necessary to

1. set out the portions thereof attacked; suffice it to say, that such allegations are sufficient to repel the assault of a general demurrer. *Domestic Block Coal Co.* v.

2. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. It is claimed the complaint is insufficient because, as appellant avers, it shows that Beedle was guilty of contributory negligence in failing to keep the switch closed. The pleading is not justly chargeable with such criticism. It avers that the switch was closed and securely locked by one of his brakemen, and it does not state facts from which the inference can be fairly drawn that he neglected to perform any subsequent duty devolved on him. It is contended by appellant that the complaint shows that Beedle was in his caboose, 250 feet from the target, in

Vol. 182—11

plain view thereof, and that the danger of the open switch was therefore obvious and that consequently he assumed the risk of such danger. Counsel are in error in interpreting the allegations of the complaint. It is alleged that Beedle had no actual knowledge of the open switch, and, in the exercise of ordinary care could have had no such knowledge. It is also alleged that the negligence of the engineer of the passenger train was the proximate cause of the injury. Beedle could not be charged with the assumption of the risk of the danger of the open switch, unless he knew it was open, or unless it was his duty, under the facts alleged, to discover that it was open. The allegations rebut any such inference. If it be conceded that the doctrine of assumed risk might otherwise apply, the allegations here are such as to preclude its application. It is contended that the allegation that Beedle was engaged in making his train report, "which said report he was, by the orders, * * * of the defendant, required to have ready on his return to Peru," etc., is insufficient for failure to set out a copy or the substance of the "orders". The allegation was sufficient to repel a demurrer for want of facts. If greater certainty was desired, a motion to make the complaint more definite, should have been filed. §385 Burns 1914, §376 R. S. 1881.

In pleading the speed ordinance of the city of Delphi, appellee sets out an alleged copy of section nine of a certain ordinance; this section declared it unlawful to run trains in the city limits, at a speed greater than six miles per hour. The complaint contains no averment that the ordinance fixed any penalty for its violation, and appellant contends that such an ordinance without a penalty is a nullity, and that the complaint is bad for the lack of such a material averment. *Clevenger* v. *Town of Rushville* (1883), 90 Ind. 258; *Whitson* v. *City of Franklin* (1870), 34 Ind. 392, are cited. This was not a suit to recover a penalty, and it was unnecesasry, if not improper, to

incorporate in the pleading any reference to the penalty provisions of the ordinance. *Inland Steel Co.* v. *Ilko* (1914), 181 Ind. 72, 103 N. E. 7. Other objections, of a general nature, are urged against the complaint, but in our opinion the court did not err in overruling appellant's demurrer.

The city speed ordinance set out in the complaint was a copy of §9 of chapter 12, of the "General Ordinances of the city of Dephi, Indiana." The court admitted in evidence certain pages of the record of the proceedings of the common council of the city of Delphi, containing a minute of council proceedings from 1866 to 1874. The portions of the record admitted, show that on April 23, 1872, the judiciary committee reported that, pursuant to a resolution adopted July 21, 1871, requiring it to prepare and present to the council a complete set of revised ordinances, it had prepared, arranged and revised twelve chapters, which had passed first reading and the same were then offered for final consideration; that the work had been more than half completed and would soon be finished. The twelfth chapter was then read, also an ordinance, adopting the revised ordinances, was passed to second reading. The council then adjourned until the following evening. On April 24, 1872, this record shows that all councilmen were present, and the following proceedings were had:

"The minutes of last meeting read and adopted. Chapters one to twelve inclusive, of the revised ordinances, and ordinance adopting the same, read and adopted by the following vote; Ayes: Messers. Haugh, Higgenbotham, Kilgore, Lytle, Smith and Wood. Noes: none. Adjourned until Friday evening, April 26, 1872. R. M. Allen, Mayor. Attest: Frank Brough, Clerk."

The city clerk of Delphi was called by appellee as a witness, and produced a record of his office, which he said was not designated by number, letter or figure, but was known as the "old ordinances" of the city. On page one, of the record, appears the following: "General Ordinances of the

city of Delphi, Indiana." This is followed by what purports to be seventeen chapters of ordinances, of which chapter 12, is entitled, "An ordinance regulating railroads running through the city of Delphi", etc. Chapter 18, is entitled "An ordinance ordaining and establishing the revised general ordinances of the city of Delphi." Section one of this latter ordinance provides that the foregoing seventeen chapters shall constitute the revised general ordinances of the city of Delphi, and shall be received as evidence in all courts without further proof. This ordinance was passed May 28, 1872, signed by the mayor and attested by the clerk. Section 9, of chapter 12—the speed ordinance pleaded—was admitted in evidence over appellant's objection. It appears from the minutes that chapters 1-12 were regularly adopted on April 24, 1872, by "aye" and "no" vote, and the proceedings were duly signed by the mayor and attested by the clerk. While the ordinances are not set out in such record, we are of the opinion that the latter furnishes sufficient basis to warrant the admission in evidence of §9, Chapter 12, of the general ordinances of the city as found in the General Ordinance Record, especially when supplemented by the provisions of chapter 18 of such general ordinances. We therefore hold that appellant's contention that the speed ordinance was not sufficiently authenticated to warrant its admission in evidence should not prevail. Appellant calls our attention to the act of 1867 (§3099

8. R. S. 1881, Acts 1867 p. 33), which provides that ordinances should be recorded in a book kept for that purpose, and signed by the presiding officer and attested by the clerk; and that the "yea" and "nay" vote should be entered of record. This court has held the above provisions not mandatory, but directory only. *Shea* v. *City of Muncie* (1897), 148 Ind. 14, 33, 46 N. E. 138; *Landes* v. *State, ex rel.* (1903), 160 Ind. 479, 484, 67 N. E. 189. Appellant

9. further claims that it was not within the power of the city council to pass various ordinances "in a

bunch''; that there was no ''yea'' and ''nay'' vote on chapter 12 separately, neither was it separately signed by the mayor or attested by the clerk, and therefore it was never valid. In *Bowers* v. *City of Indianapolis* (1907), 169 Ind. 105, 112, 81 N. E. 1097, 13 Ann. Cas. 1198, this court quoted with approval, the following from *Garrett* v. *Janes* (1886), 65 Md. 260, 3 Atl. 597, ''That it is competent for a municipal legislature by a single ordinance to declare any compilation of ordinances or proposed ordinances in force, in the absence of a statutory prohibition, we do not doubt. Such a power has been too generally exercised, with implied if not express recognition by the courts to be now questioned.'' The court did not err in admitting the speed ordinance in evidence.

The court admitted in evidence certain boundary ordinances and plats of the city of Delphi, offered by appellee to prove that appellant's track from Deer Creek bridge to the place of the accident,—a distance of over 2,200 feet—was within the city limits. A great many objections were made to the admission of such evidence, which are here zealously urged as grounds for reversing the judgment. While we are inclined to the opinion that the court did not err, we are constrained to hold that if error be conceded it must be deemed harmless, for appellee proved the same fact by parol evidence. This was not an action to establish the line dividing the corporation from the adjacent country. The question of boundary lines was only collaterally involved, and in such case it is competent to prove, by parol evidence, the fact that the accident occurred within the city limits. *Indianapolis, etc., R. Co.* v. *Waddington* (1907), 169 Ind. 448, 465, 82 N. E. 1030, and authorities cited; *New York, etc., R. Co.* v. *Lind* (1913), 180 Ind. 38, 102 N. E. 449.

The appellant earnestly contends that the verdict is not sustained by sufficient evidence, and is contrary to law. There is no substantial conflict in the direct evidence, which

discloses the following facts: The west boundary line of Delphi was at appellant's Deer Creek bridge, 2,013 feet west of the switch target; Beedle's freight train arrived from the west about 7:30 a. m. and was run east through the switch on the side track, and stopped at a point so that the caboose, in the rear, was 250 feet east of the target; the train stood at this point until the accident; the switch was securely closed and locked by one of Beedle's brakemen as soon as his train passed through; each member of Beedle's crew had a key to the switch lock, and the telegraph operator, bridge foreman, and section foreman each had one also; when the freight train was stopped on the side track, Beedle and his crew proceeded with their duties of switching cars, unloading freight, etc.; while engaged in this work two passenger trains passed west through the city on the main track; it was Beedle's duty to check bills, on unloading freight, look after switching, get train orders, and make train reports; after the freight was unloaded, and the switching done, Beedle went to the operator's office and got his train orders; he then learned that the east bound passenger train known as No. 6, had arrived at Colburn, about six miles west; thereupon Beedle and the rear brakeman started for their caboose, which was west of the operator's office a distance of few hundred feet; on their way, they discussed train orders, just received; on arriving at the caboose Beedle unlocked the door, and they went inside; Beedle sat down to commence his train report when at 9:27 a. m. the brakeman saw the passenger train from the west enter the side track at the switch; the brakeman leaped from the caboose through a window after calling to Beedle to jump, but the latter failed to escape and was killed in the collision that immediately followed; the position of the switch target was plainly visible from the rear platform of the caboose and could have been seen by Beedle on entering the caboose, had he looked in that direction; the passenger train entered the city limits at a speed of thirty miles per hour, and was run-

ning about twenty miles per hour when the collision occurred; when the passenger train was 300 feet west of the target, its engineer saw that the target indicated that the switch was open, and immediately applied the air brakes, but could not check the speed sufficiently to avoid the collision; the passenger train, running at a speed of six miles per hour could have been stopped within a distance of from fifty to one hundred feet, at any place between the caboose and a point 550 feet west thereof; at and before the accident, the following rules, promulgated by appellant, were in force, and known to Beedle.:

"Movement of Trains. 104. Switches must be left in proper position after having been used. Conductors are responsible for the position of switches used by them and their trainmen, except where switch tenders are stationed. A switch must not be left open for a following train, unless in charge of a trainman of such train. 105. Both conductors and enginemen are responsible for the safety of their trains, and under conditions not provided for by the rules, must take every precaution for their protection. 106. In all cases of doubt or uncertainty the safe course must be taken, and no risks run."

The evidence does not disclose who it was that opened the switch, or how long before the collision, it had been opened, but it does show that no one of Beedle's crew unlocked it; it further shows that Beedle's rear brakeman, when entering the caboose, heard the whistle of the passenger engine when it was about a mile west of Delphi. There was no switch tender stationed at the switch. Beedle knew that this passenger train had often, before this time, run at a rate of speed of twenty miles per hour within the city limits of Delphi. Appellant claims that because Beedle knew that the passenger train was in the habit of exceeding the ordinance speed limit at this place, he thereby assumed the risk of danger. Such doctrine can not be recognized. Violations of ordinances, however often repeated, do not render them obsolete. The engineer of the passenger

train, in exceeding the lawful speed limit, was thereby guilty of negligence, *per se.* Appellee's decedent assumed no risk of danger from such negligence. *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 116, 88 N. E. 1073, 89 N. E. 485; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033.

It is earnestly insisted that Beedle was guilty of contributory negligence in failing to keep the switch locked, and in failing to discover it was open, before the collision. The rules of the company did not require him to watch the target after its locking, during his contemplated stay at Delphi. He had many duties to perform while there. On his way to the caboose he was discussing his train orders with the rear brakeman. Under all the facts disclosed, it was for the jury to determine whether Beedle was guilty of contributory negligence in failing to discover, before the accident, that the switch had been opened by some one. *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, 82 N. E. 986.

Appellant contends that the undisputed evidence shows that the proximate cause of the injury was the open switch—that otherwise the accident would not have happened; that no negligence is charged against appellant with reference to the open switch, and consequently appellee was not entitled to recover. While it is true that the accident would not have happened in the absence of the open condition of the switch, it is also true that it would not have happened had the speed of the passenger train not exceeded six miles per hour. Where two causes result in an accident, the question of the dominant or proximate one is ordinarily for the jury. *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 325, 90 N. E. 467. The evidence here warranted the jury in finding that the unlawful speed was the proximate cause of the injury, as alleged in the complaint. *Wabash R. Co.* v. *Beedle,*

*supra; Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 269, 38 Am. Rep. 134; *Sioux City, etc., R. Co.* v. *Stout* (1873), 84 U. S. 657, 21 L. Ed. 745.

Error is asserted in overruling appellant's motion for judgment on the jury's answers to interrogatories. By these answers, the jury found, among other things, that Beedle, when he arrived opposite the caboose, by carefully looking in the direction of the target and switch, could have discovered the dangerous condition thereof, and that there were no obstructions to decedent's view to prevent him from seeing the position of the target had he looked. It also found that Beedle was familiar with the rules hereinbefore set out. We can not say that these facts are in irreconcilable conflict with the general verdict wherein the jury found that decedent was not guilty of contributory negligence in failing to discover the open condition of the switch. Other reasons are urged against the correctness of the court's ruling on the motion for judgment, but we are of the opinion that there was no error.

Complaint is made of the court's instruction to the jury not to consider the remarriage of the widow in assessing damages. It is true, as appellant suggests, that a cause of action under the statute (§285 Burns 1914, Acts 1899 p. 405) in favor of a sole beneficiary would not survive the death of such person. *Diller* v. *Cleveland, etc., R. Co.* (1904), 34 Ind. App. 52, 72 N. E. 271. This action was brought under §285, *supra,* for the benefit of decedent's widow and child. While it is true that the administratrix is no longer the widow of decedent within the common meaning of the word, we are unable to find any authority to support the proposition that the action would abate on the remarriage of the widow, were she the sole beneficiary. On the contrary the authorities agree on the proposition that in the assessment of damages, the remarriage of the widow should not be considered. *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241, 247, 66 N. E. 696; *Davis* v. *Guar-*

*nieri* (1887), 45 Ohio St. 470, 15 N. E. 350, 4 Am. St. 548; 13 Cyc. 365, and authorities cited.

The appellant and appellee each requested the court to submit certain interrogatories for answer. The request was granted, the interrogatories were sealed in an envelope, and the court instructed the jury not to open the envelope until it should agree on a general verdict. Appellant claims that such action constituted reversible error. In *Buntin* v. *Rose* (1861), 16 Ind. 209, this court said: "Before the enactment of our statute, * * * it was difficult to have placed upon the record of a trial, the component parts of, or elements' which entered into and formed, the verdict of a jury." The main object of submitting interrogatories is to elicit the separate material facts, thereby enabling the court to correctly apply the law, and to guard against a misapplication thereof in a general verdict, which is compounded of law and fact. 2 Thompson, Trials (2d ed.) §2670. While it is true that the statute does not require the interrogatories to be answered in the absence of an agreement on a general verdict, we perceive no good reason why they should not be considered by the jury in deliberating on the general verdict, for it is obvious that such consideration might better enable the jury to make a conscientious general finding. The practice here pursued might, in some instances, mislead the jury in regard to the measure of duty required of it, in making truthful and accurate answers to proper interrogatories. Such practice merits condemnation rather than approval. In this case the court by instruction No. 30, given at appellant's request, informed the jury that "it should act with conscientious regard for the evidence in answering each interrogatory according to the weight or preponderance of the evidence. If the jury cannot agree upon an answer to any interrogatory, then they can not agree upon a verdict in the case." Instruction No. 29, given at appellant's request, among other things warned the jury against being influenced by sympathy or

prejudice, and informed it that any individual juror, if convinced by the evidence given, that the finding should be for the plaintiff or the defendant, should not subordinate his opinion to a contrary one of the others. In view of these instructions, and on a consideration of the answers, in relation to the evidence, we are satisfied that no harm resulted to appellant by reason of the action of the trial court. *Summers* v. *Tarney* (1890), 123 Ind. 560, 564, 24 N. E. 678.

It is claimed the verdict—$10,000—is excessive. The evidence shows that the decedent was twenty-six years of age, healthy, sober and industrious and earned an average 18. of $100 per month, of which he used $30 per month for his personal expenses, and devoted the remainder to the use of his family. The present value of an annuity of $70 per month, for the life of a person twenty-six years old, estimated on the Carlisle mortality tables, at six per cent, would exceed the sum of $10,000. It is true, as appellant suggests, that had the decedent's earning capacity been five times as great, the verdict, under the statute (§285 Burns 1914, *supra*), could not have exceeded $10,000; yet, within the statutory limitation, the law warrants the recovery of full pecuniary compensation, and we cannot say that the verdict is excessive. *Louisville, etc., R. Co.* v. *Buck* (1889), 116 Ind. 569, 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. 883; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 37 N. E. 150, 38 N. E. 594. In the instruction to the 19. jury in relation to the assessment of damages the court said it might consider "loss to decedent's infant child, if any, of such parental care, training, advice and guidance, as you believe from the evidence, she would have otherwise received but for his death." Appellant concedes the above instruction would be proper, if there were evidence to support it, but claims that there was no evidence here as to decedent's disposition, whether kindly or otherwise, or to show that he had any affection for his child (one year old) or that he was qualified by education or disposition

to give her proper parental care, training, advice or guidance. The objection is hypercritical. The undisputed evidence shows that decedent was sober, and industrious; that he was possessed of such intelligence as to entitle him to hold the important position of train conductor when he was only twenty-six years of age; that of each $100 earned he gave $70 to his wife for the benefit of her and the babe. There was no error. Other criticisms are directed against the same instruction, but we are of the opinion that nothing therein contained harmed appellant.

Appellant claims error in many of the instructions given, and in refusing certain ones requested by it. The most serious objections urged have been disposed of already in this opinion. In other respects, no harmful error was committed by the giving of any instruction, nor by the refusal to give any one requested.

The record discloses no error that warrants the granting of another trial of the cause. Judgment affirmed.

Myers, J., not participating.

NOTE.—Reported in 104 N. E. 69. As to the measure of damages recoverable for negligent killing of husband, see 17 L. R. A. 76. On the effect of remarriage to mitigate damages recoverable for negligent killing of husband, see 67 L. R. A. 95. As to what is an excessive verdict in an action for death by wrongful act, see 18 Ann. Cas. 1209. As to functions of court and jury respectively in determining proximate cause, see 36 Am. St. 851. See, also, under (1) 31 Cyc. 288; (2) 26 Cyc. 1399; (3) 26 Cyc. 1397; (4) 26 Cyc. 1384; (5) 31 Cyc. 644; (6, 7) 26 Cyc. 1392; (8) 28 Cyc. 358; (9) 28 Cyc. 1915 Ann. 388-New; (10) 17 Cyc. 469; (11) 26 Cyc. 1180; (12) 26 Cyc. 1482; (13) 26 Cyc. 1516; (14) 29 Cyc. 640; (15) 26 Cyc. 1513; (17) 38 Cyc. 1916; (18) 13 Cyc. 375; (19) 13 Cyc. 385, 371.